In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2551

MARTIN MENDOZA-SANCHEZ,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A038-780-186.

SUBMITTED JULY 22, 2015 — DECIDED DECEMBER 23, 2015

Before WOOD, *Chief Judge*, and POSNER and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The petitioner, a citizen of Mexico, asks us to vacate an order of the Board of Immigration Appeals affirming an immigration judge's denial of his application, based on the Convention Against Torture (an international convention to which the United States belongs), for deferral of removal. He contends that removal (which would mean returning him to Mexico) would result in his death—a

form of torture within the meaning of the Convention, see Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, Senate Treaty Doc. No. 100–20, p. 20, 1465 U.N.T.S. 85, Art. 1(1); 8 C.F.R. § 1208.18(a)(4)(iii)—at the hands of the notorious Mexican drug cartel La Linea.

We recruited counsel for the petitioner (who had filed his petition in our court pro se) and directed briefing on whether the Board had been justified in concluding that Mendoza-Sanchez had not presented sufficient evidence to establish that if he were returned to Mexico "a Mexican public official would acquiesce in (or be willfully blind to)" his being murdered by La Linea.

After the petitioner's opening brief was filed, the government, before filing its brief in response, filed a motion asking us to remand the case to the Board for "reconsider[ation] of Mendoza's eligibility for deferral of removal under the CAT." The motion does not confess error, but instead recommends remand to enable the Board to "conduct an additional investigation of the record evidence and attempt to issue a fuller explanation concerning issues presented by … Mendoza's request for deferral of removal."

He opposes the motion but we've decided to grant it, as we think a sound resolution of this case will be promoted by our giving the Board an opportunity to reconsider the standard for acquiescence articulated by it and the immigration judge in this and other cases, and, more broadly, to reconsider the Board's approach (and that of immigration judges) to requests for deferral of removal on the basis of the Convention Against Torture and its implementing regulations.

Mendoza-Sanchez came to the United States at the age of 18, in 1983, and became a lawful permanent resident. But somewhere along the line he became a cocaine dealer, and some of the cocaine that he sold he'd obtained from members of the La Linea cartel, which is known to be violent and to work with corrupt Mexican police officers. In 2010 he was convicted in an Indiana court of dealing in cocaine and sentenced to 12 years in prison. A fellow prisoner who was a member of La Linea—a man whom Mendoza-Sanchez knew as "Pelon"—attacked him when he was standing in line at the prison cafeteria, broke two of his teeth, and explained to him that several members of the cartel, who had been arrested, believed that he had snitched on them. As he testified at the immigration hearing, "I was facing a lot more time than what I actually got and this gave them another reason to believe that I snitched on them to get less time." For though sentenced to 12 years, he had been released after only 5.

Pelon told him that the cartel would have him killed if he returned to Mexico, and that it knew where in the country he had grown up (the city of Matamoros) and presumably would want to return to. At his immigration hearing, Mendoza-Sanchez presented evidence that La Linea is "not confined to a State or a small area but its reach is nationwide," and that the "law enforcement agencies are infiltrated by the Cartels." The State Department's human rights report on Mexico, which he also submitted, details the widespread corruption of Mexican police and their routine participation in the activities of drug organizations.

Having been placed in removal proceedings at the end of his prison term, Mendoza-Sanchez was found to be removable to Mexico on the basis of his drug conviction. He does

not question his removability, but seeks only a deferral of removal under the Convention Against Torture. We summarized the evidence that he introduced at the hearing on his motion for deferral. Counsel for the Department of Homeland Security conducted only a brief cross-examination. He did not dispute the bulk of Mendoza-Sanchez's testimony and with his questioning elicited only a few pieces of potentially relevant information: that he did not know Pelon's full name (only his nickname), hadn't spoken to him since the incident in the prison, had learned only from people in prison that Pelon had returned to Mexico, and had been threatened by no one other than Pelon. Asked whether there was any place in Mexico where he would not be menaced by La Linea, Mendoza-Sanchez responded that although La Linea's name ("The Line") was derived from its control of the Mexican border, members of the cartel are "all over Mexico" and "work everywhere."

The immigration judge's decision describes Mendoza as "a credible witness" whose "testimony is generally consistent internally and with the limited documentary evidence in the record," but concluded that the evidence did not "establish [his] eligibility for deferral of removal." The Board of Immigration Appeals affirmed, without rejecting either the immigration judge's credibility finding or Mendoza-Sanchez's contention that he would more likely than not be killed by La Linea if he returned to Mexico. The Board based its affirmance on Mendoza-Sanchez's not having "presented sufficient evidence to establish that … a Mexican public official would acquiesce (or be willfully blind) to such harm." The Board did this in the face of evidence, apart from what we've already discussed, that police officers routinely collaborate with and protect drug cartels in Mexico and La

Linea specifically, and that according to the State Department's Mexico 2013 Human Rights Report "despite some arrests for corruption, widespread impunity for human rights abuses by officials remained a problem in both civilian and military jurisdictions … . Security forces, acting both in and out of the line of duty, arbitrarily and unlawfully killed several persons, often with impunity," and "[t]here were multiple reports of forced disappearances by the … police"; "authorities routinely failed to conduct thorough and expeditious searches and investigations in disappearance cases"; "there were credible reports of police involvement in kidnappings for ransom" and " frequent reports of citizens … beaten, suffocated, tortured with electric shocks, raped, and threatened with death in the custody of arresting authorities."

The report emphasizes police involvement in the activities of drug organizations, explaining that "police, particularly at the state and local level, were involved in kidnapping, extortion, and providing protection for, or acting directly on behalf of, organized crime and drug traffickers. … Local forces in particular tended to be poorly compensated and directly pressured by criminal groups, leaving them most vulnerable to infiltration." The report describes an incident in which "members of a Mexico City drug gang kidnapped and killed … victims in retaliation" for violence committed against a member of the gang, and the suspects "includ[ed] four police officers."

And contrary to what the Board thought, the presence of the Mexican army in Matamoros supports rather than undermines Mendoza-Sanchez's claim that local *police* will acquiesce in his torture; had the police been protecting the city,

the army would have had no reason to be there. And so, the State Department report tells us, "Despite some arrests for corruption," Mexico continues to be plagued by "wide-spread impunity for human rights abuses by officials."

We discussed the "acquiescence" element of a claim for deferral of removal under the Convention Against Torture at some length in our very recent decision in *Rodriguez-Molinero v. Lynch*, a decision that can provide some useful guidance for the immigration judge and the Board on remand of the present case. We noted that the immigration judge had erred in saying that in order to be a ground for deferral of removal the infliction, instigation, consent, or acquiescence in torture must be by the Mexican *government* rather than just by Mexican police officers or other government employees. *Rodriguez-Molinero v. Lynch*, No. 15-1860, 2015 WL 9239398, at *4–5 (7th Cir. Dec. 17, 2015). Deferral is warranted by severe pain or suffering "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.*, § 1208.18(a)(7). Evidence that Mexican police participate as well as acquiesce in torture is found in abundance in this case as it was in *Rodriguez-Molinero*.

Nor does it matter if the police officers who will torture Mendoza-Sanchez if he's forced to return to Mexico are "rogue officers individually compensated by [a gang member] to engage in isolated incidents of retaliatory brutality, rather than evidence of a broader pattern of governmental

acquiescence in torture." *Rodriguez-Molinero v. Lynch*, *supra*, 2015 WL 9239398, at *5. It is irrelevant whether the police are "rogue" (in the sense of not serving the interests of the Mexican government). A petitioner for deferral of removal under the Convention Against Torture need not prove that the Mexican government is complicit in the misconduct of its police officers. It's simply not enough to bar removal if the government may be trying, but without much success, to prevent police from torturing citizens at the behest of drug gangs. See *id.* at *5–6; *N.L.A. v. Holder*, 744 F.3d 425, 440–42 (7th Cir. 2014); *Madrigal v. Holder*, 716 F.3d 499, 509–10 (9th Cir. 2013). The petitioner in *Avendano-Hernandez v. Lynch*, 800 F.3d 1072 (9th Cir. 2015), "provided credible testimony that she was severely assaulted by Mexican officials on two separate occasions: first, by uniformed, on-duty police officers, who are … 'public officials' for the purposes of CAT. … [The court] reject[ed] the government's attempts to characterize these police … officers as merely rogue or corrupt officials. … The BIA erred by finding that Avendano-Hernandez was not subject to past torture by public officials in Mexico." *Id.* at 1079–80.

We explained in *Rodriguez-Molinero* that if the Mexican government could be expected to protect the petitioner from the drug cartel that wanted to kill him, if he were returned to Mexico, the risk that he would be tortured or killed might be too slight to entitle him to deferral of removal. The immigration judge in that case had remarked that the Mexican government was *trying* to control the drug gangs, but it is success rather than effort that bears on the likelihood of a person's being killed or tortured if removed to Mexico. *Rodriguez-Molinero v. Lynch*, *supra*, 2015 WL 9239398, at *6. In the present case, as in *Rodriguez-Molinero*—unsurprisingly since

it too is about deferral of removal to Mexico of a Mexican citizen who appears to be in the sights of one of the powerful Mexican drug cartels—no evidence has been presented that the Mexican government can protect the citizen from torture at the hands of local public officials or to which local public officials are willfully blind. As we said earlier in this opinion, "acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7).

Mendoza-Sanchez appears to have a strong case for deferral of removal. But as explained at the beginning of this opinion, at the government's request we have decided to remand the case to the Board of Immigration Appeals— which we trust will pay careful heed to the analysis in this opinion and in *Rodriguez-Molinero*.

REMANDED