*807 POSNER, Circuit Judge,
concurring.
I agree with the panel’s conclusion that the petitioner is not entitled to relief because, deported to Mexico in May of this year and residing in Veracruz, where members of his extended family live — but which is also where the fearsome Mexican drug gang known as the Zetas is centered — he’s failed to make any showing that he can’t relocate from Veracruz to some place in Mexico in which he won’t be persecuted either by the Zetas or by some other gang. In addition he’s failed to show that in Veracruz or elsewhere the Zetas have targeted his family or him. (Compare Mendoza-Sanchez v. Lynch, 808 F.3d 1182, 1183 (7th Cir. 2015) (petitioner had snitched on La Linea, another* powerful Mexican drug gang); Rodriguez-Molinero v. Lynch, 808 F.3d 1134, 1136-37 (7th Cir. 2015) (petitioner owed the Zetas $30,000).) Members of his family have it is true had violent, in one instance fatal, encounters with Zetas, but for reasons that don’t appear to have been related to their family membership or identity. The Board of Immigration Appeals described these encounters as “random incidents of violence against family members which happened years apart” and were not connected to the petitioner, and the petitioner has failed to rebut this assessment.
The petitioner might find it difficult to relocate even to a part of Mexico where, unlike Veracruz where he currently resides, the Zetas are as yet inactive; for wherever he relocates in Mexico he is bound to be asked questions about his origin, and his 20 years of living in the United States may make him recognizable as an alien and prevent his obtaining eim-ployment. But he doesn’t argue that, and I write separately only to address a proposition in the immigration court’s opinion (and echoed I regret to say in opinions of this court) that seems to me palpably false, though not determinative in this case.
The proposition is that the status of being a member of a group made up of individuals deported from the United States who, having lived in this country for many years, either have money or are believed to have money and have long-established ties to this country, and who for any of these reasons might be able to pay ransom, nevertheless can’t be deemed members of a “social group” authorized to obtain relief from deportation because of threats to the life or safety of the group’s members. The ground on which the immigration court rejected wealth as a characteristic that can define a social group is that wealth is not an “immutable characteristic.” “[T]he phrase ‘persecution on account of membership in a particular social group’ [has been] interpreted to mean ‘persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic.’ ” Matter of M-E-V-G-, 26 I. & N. Dec. 227, 230-31 (BIA 2014). “The common characteristic that defines the group must be one that the members of the group either cannot change, or should not be , required to change because it is fundamental to their individual identities or consciences.” Id. at 231. And a group consisting of people whose “primary characteristic is wealth or perceived wealth, specifically the ability to pay a ransom” does not qualify because “wealth, standing alone, is not an immutable characteristic of a cognizable social group.” Dominguez-Pulido v. Lynch, 821 F.3d 837, 844-45 (7th Cir. 2016).
That is a mistake, for a variety of reasons, one being that wealth doesn’t stand alone in the definition of the social group urged by the petitioner; it must be wealth available for payment of a ransom. But a more serious mistake was the invocation of “immutability” as a touchstone of eligibility for being a member of a “social group.” Very few characteristics of a group or *808 individual are immutable any more. For example, modern medical techniques enable people to change their sex, though doubtless sex is one of the mutable characteristics that the Board of Immigration Appeals would concede that a person “should not be required to change” as a condition of avoiding persecution. But getting back to wealth, I note that wealth does not often “stand alone” in these cases. In Tapiero de Orejuela v. Gonzales, 423 F.3d 666, 672 (7th Cir. 2005), we said that Colombian cattle farmers were not defined merely by their wealth but also by their land, their profession, and their education. And similarly Salgado-Gutierrez is defined by his having lived in the United States for twenty years — for being, as a consequence, to a degree American- — -a fact of his personal history that he can’t escape from.
Furthermore, having or being thought to have wealth is in an important practical sense “immutable.” Suppose a person facing deportation from the United States gives away all his money and arrives in his country of origin, which in this case is Mexico, penniless. The Zetas seize him and demand money. He explains that he has none. Are the Zetas likely to leave him alone? No, they’re likely to torture him, and if unable by that route to extract any money from him they are very likely to kill him.
Suppose finally that a deportee is the only wealthy person from the country to which he is to be deported. He thus is not a member of the social group to which the petitioner in this case belongs, and suppose he’s not a member of any other social group either. Does that mean he can’t avoid deportation even if he proves that he’s certain to be persecuted if deported? That would be ridiculous, though it is the implication of the statute, 8 U.S.C. § 1231(b)(3)(A), that ties deferral or cancellation of deportation to membership in a social group, and of the BIA decisions approvingly cited in the majority opinion in the present ease.