In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-3557, 15-1298, & 15-2208

GUSTAVO DOMINGUEZ-PULIDO,

*Petitioner*,

*v.*

LORETTA E. LYNCH,
Attorney General of the United States,

*Respondent*.

Petitions for Review of an Order of the
Board of Immigration Appeals.
No. A206-014-523

ARGUED MARCH 29, 2016 — DECIDED MAY 5, 2016

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. Petitioner Gustavo Dominguez-Pulido unlawfully entered the United States with his parents in or around 1993 without inspection. Approximately fifteen years after entering the United States, Dominguez-Pulido was convicted of a felony offense under Illinois law. Dominguez-Pulido was subsequently served with a Notice to Appear ("NTA"). An Immigration Judge ("IJ") concluded that he was

removable as an alien present without admission and denied various forms of relief from removal. The Board of Immigration Appeals (the "Board") dismissed Dominguez-Pulido's appeal and denied his two motions to reopen proceedings.

Dominguez-Pulido seeks review of the three decisions entered by the Board of Immigration Appeals. In light of 8 U.S.C. § 1252(a)(2)(C), which limits judicial review of final orders for removal that involve a conviction for a crime involving moral turpitude, our review is limited to questions of law and constitutional claims, § 1252(a)(2)(D). We find no reason to upset the decision of the Board of Immigration Appeals, and so we deny Dominguez-Pulido's consolidated petitions for review.

## I. Background

On September 22, 2008, Dominguez-Pulido was convicted of burglary, a felony offense under Illinois law.[1] 720 Ill. Comp. Stat. 5/19-1. Dominguez-Pulido pleaded guilty to burglary of a motor vehicle with intent to commit the offense of theft therein.

On October 17, 2013, a Department of Homeland Security ("DHS") officer served Dominguez-Pulido with a NTA. The NTA charged Dominguez-Pulido with removability as an alien present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i), and as an alien convicted of a crime involving moral turpitude under § 1182(a)(2)(A)(i)(I).

---

[1] Dominguez-Pulido was convicted under 720 Ill. Comp. Stat. 5/19-1(a), which provides that "[a] person commits burglary when without authority he or she knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof, with intent to commit therein a felony or theft."

Dominguez-Pulido appeared before an IJ at a hearing on February 5, 2014. He refused to admit or deny the NTA's factual allegations, including the charges of removability. Dominguez-Pulido also submitted to the IJ a motion filed in his post-conviction proceeding in the Circuit Court of Cook County, Illinois, in which he sought to vacate his guilty plea. In an affidavit attached to that motion, Dominguez-Pulido averred that he would not have entered a guilty plea if he had been aware of the immigration consequences.

Dominguez-Pulido next appeared before the IJ on March 10, 2014. The IJ determined, based upon the government's submission of a Record of Deportable/Inadmissible Alien, or Form I-213, that Dominguez-Pulido was a native and citizen of Mexico who entered the United States without inspection. The IJ reserved ruling on the criminal charge of removability. Dominguez-Pulido indicated that he feared being deported to Mexico and intended to seek relief from removal by filing applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"), as well as voluntary departure in the event that his applications were denied.

Dominguez-Pulido filed his written applications for asylum, withholding of removal, and protection under CAT on April 16, 2014. In the applications, he listed his nationality as "Mexican" and his place of birth as "Durango, Mexico." He averred that his parents were also born in Durango and that he entered the United States without inspection. He claimed that he feared criminal violence in Mexico and abuse by corrupt policemen.

Dominguez-Pulido presented evidence and testimony in support of his applications at a hearing on June 17, 2014. He

testified that he feared returning to Mexico based on news reports of violence and corruption, and described how two friends, both of whom were U.S. citizens, were seriously injured by criminals during visits to Mexico. He claimed that he would likely become homeless in Mexico since he had no relatives there and would have difficulty finding employment since he was not educated in Mexico. He further testified that criminals would likely kidnap him to obtain a ransom from his relatives, and that his family's lack of money would lead to his eventual murder. In support of this testimony, Dominguez-Pulido submitted a 2014 Travel Warning issued by the U.S. State Department as well as the State Department's 2012 Human Rights Report for Mexico. Dominguez-Pulido's brother, Alberto Dominguez, testified that he believed Dominguez-Pulido would be kidnapped and killed if he returned to Mexico.

The IJ sustained the charges of removability and denied Dominguez-Pulido's applications for relief. The IJ found that the DHS met its burden of demonstrating Dominguez-Pulido's alienage and concluded that he was removable as an alien present without admission. § 1182(a)(6)(A)(i). In addition, the IJ concluded that Dominguez-Pulido's burglary conviction categorically qualified as a crime involving moral turpitude. § 1182(a)(2)(A)(i)(I).

With regard to the applications for relief, the IJ found that Dominguez-Pulido was barred from asylum because he failed to timely file his application. *See* 8 U.S.C. § 1158(a)(2)(B), (D) (one-year time limit on filing an application for asylum and possible exceptions). The IJ also denied the application for withholding of removal. The IJ found that Dominguez-Pulido failed to demonstrate past persecution, and therefore there

was no presumption of future persecution. Additionally, the IJ denied the application for CAT protection because Dominguez-Pulido failed to show a likelihood of torture by or with the acquiescence of a Mexican public official.

Dominguez-Pulido appealed the IJ's decision to the Board of Immigration Appeals. The Board dismissed his appeal on November 14, 2014, affirming the judgment of the IJ. On December 12, 2014, Dominguez-Pulido filed a motion to reconsider with the Board. The Board denied this motion, which it also treated as a motion to reopen removal proceedings, on February 5, 2015. The Board denied Dominguez-Pulido's second motion to reopen on May 28, 2015. Dominguez-Pulido appeals.

## II. Discussion

On appeal, Dominguez-Pulido argues that the Board erred by upholding the IJ's denial of his applications for asylum, withholding of removal, and protection under CAT. He also claims violations of his constitutional rights under the Eighth Amendment and the Due Process Clause. Upon review, we examine both the decision of the IJ as well as the analysis of the Board in affirming the IJ's decision. *Sobaleva v. Holder*, 760 F.3d 592, 596 (7th Cir. 2014). We review legal conclusions de novo and factual conclusions to determine whether they are supported by substantial evidence. *Id.*

### A. Jurisdiction to Review the Final Order of Removal

Respondent argues that our jurisdiction to review Dominguez-Pulido's claims is limited by § 1252(a)(2)(C), which provides: "Notwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to review any final order of removal against an alien

who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) … ." Section 1182(a)(2) states that an individual is removable if he was convicted of a crime involving moral turpitude. § 1182(a)(2)(A)(i)(I). Dominguez-Pulido's response is that § 1252(a)(2)(C) does not apply to his case. He says that the IJ and the Board erred by finding that: (1) the government had established his alienage; and (2) he was convicted of a crime involving moral turpitude. If Dominguez-Pulido is correct, then we have jurisdiction to review the removal order against him.

Consequently, a threshold question is whether § 1252(a)(2)(C) applies. We therefore must determine whether the IJ and the Board properly concluded that Dominguez-Pulido is a citizen of Mexico who was convicted of a crime involving moral turpitude, thus triggering the application of § 1252(a)(2)(C).

Dominguez-Pulido first argues that the government did not meet its burden of establishing alienage because the only evidence provided was the Form I-213, which listed him as a citizen of Mexico. Dominguez-Pulido also claims that the IJ improperly relied on the affidavit attached to his post-conviction petition as a concession of alienage; the IJ stated that these documents convinced him that Dominguez-Pulido was not a citizen of the United States because if he were, his conviction would not result in deportation or the consequences complained of in his affidavit and petition. Notably, Dominguez-Pulido does not assert that he is not an alien or point to any evidence that he is not an alien. Although the IJ did not specifically rely on the Form I-213, the Board took administrative notice of the form and found that the IJ had properly admitted it into the record.

Dominguez-Pulido further argues that the Form I-213 was unreliable and that the IJ should have given him the opportunity to cross-examine the DHS officers who prepared it. However, there is no automatic right to cross-examine an officer who prepared a Form I-213, and we regard the form as inherently trustworthy absent "any indication that [it] contains information that is manifestly incorrect or was obtained by duress … ." *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009).

In the case at hand, there is no indication that the Form I-213 was carelessly or maliciously drafted, with the exception of one clerical error (a single reference to "she" instead of "he"). Limited redactions of sensitive information, such as Dominguez-Pulido's "FBI number," also do not demonstrate that the form is manifestly incorrect. Moreover, Dominguez-Pulido does not allege that the information on the form is itself inaccurate; he merely attacks the form on the basis that is was neither certified nor testified to, without pointing to any case law establishing a certification requirement. Accordingly, the IJ and the Board properly found that Dominguez-Pulido is an alien.

Dominguez-Pulido next argues that the IJ and the Board erred by finding that he was convicted of a "crime involving moral turpitude." Specifically, he claims that the phrase "crime involving moral turpitude" makes the statute void for vagueness. But the United States Supreme Court has observed that this phrase has been part of the immigration laws dating back to 1891 and "[n]o case has been decided holding that the phrase is vague, nor are we able to find any trace of judicial expression which hints that the phrase is so meaningless as to be a deprivation of due process." *Jordan v. De George*,

341 U.S. 223, 230 (1951). In *Jordan*, the Supreme Court looked to "the manner in which the term 'moral turpitude' has been applied by judicial decision" and found that courts have invariably held that "a crime in which fraud is an ingredient involves moral turpitude." *Id.* at 227; *see also Abdelqadar v. Gonzales*, 413 F.3d 668, 670 (7th Cir. 2005). Similarly, the Board has long held that burglary with the intent to commit theft is a crime involving moral turpitude. *See, e.g., Matter of De La Nues*, 18 I. & N. Dec. 140, 145 (BIA 1981).

Dominguez-Pulido contends that, even if the statute is constitutionally valid, his conviction involves a divisible statute—a statute that proscribes multiple types of conduct, some of which involve moral turpitude and some of which do not. But again, it is well-established that a burglary of this type constitutes a crime involving moral turpitude. *See id.*

Even so, Dominguez-Pulido contends that the IJ erred by looking to the indictment to determine whether or not his conviction was for a crime involving moral turpitude. He claims that the IJ should have looked instead to the certified statement of conviction. We agree with the Board that Dominguez-Pulido's argument is unpersuasive. Under the "modified categorical approach," which applies when the state statute forming the basis of the conviction is divisible, a court may consult the charging document. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *Lopez v. Lynch*, 810 F.3d 484, 489 (7th Cir. 2016).

Relatedly, we cannot accept Dominguez-Pulido's claim that the reopening of proceedings is warranted given the Attorney General's decision to vacate *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008). *Matter of Silva-Trevino*, 26 I. & N. Dec. 550 (A.G. 2015). In its November 14, 2014 decision, the

Board determined that the IJ properly applied the modified categorical approach pursuant to *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008). Six months later, in considering Dominguez-Pulido's second motion to reopen proceedings, the Board further concluded that any material change in the law based on the Attorney General's decision to vacate *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), was immaterial to Dominguez-Pulido's case because the Board had previously found on an independent basis that Dominguez-Pulido's statute of conviction was categorically a crime involving moral turpitude. *See De La Nues*, 18 I. & N. Dec. at 145 ("Burglary and theft or larceny, whether grand or petty, are crimes involving moral turpitude.").

In sum, the IJ and the Board properly concluded that Dominguez-Pulido is a citizen of Mexico who was convicted of a crime involving moral turpitude. Thus, § 1252(a)(2)(C) applies and limits the scope of our review.

### B. Legal Questions and Constitutional Claims

The limiting language of § 1252(a)(2)(C) bars our consideration of factual questions raised by Dominguez-Pulido. However, we retain jurisdiction to review de novo colorable legal questions and constitutional claims pursuant to § 1252(a)(2)(D).[2] *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997–98 (7th Cir. 2012).

---

[2] Section 1252(a)(2)(D) states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of

1. *Applications for Asylum, Withholding of Removal, and Protection Under CAT*

Dominguez-Pulido claims that the IJ and the Board erred by denying his applications for asylum, withholding of removal, and CAT protection. He first contends that the IJ erroneously denied his asylum application as untimely rather than reaching the merits. This is not a colorable legal argument because, in reviewing the IJ's decision, the Board assumed that the application was timely and, in fact, reached the merits. The Board found that Dominguez-Pulido's failure to establish a clear probability of persecution on account of belonging to a particular social group was fatal to both his asylum and withholding of removal applications. Since we review both the decision of the IJ and the analysis of the Board in affirming the IJ's decision, we reject Dominguez-Pulido's assertion that his asylum claim was not evaluated on the merits. Therefore, the matter of timeliness considered by the IJ is beside the point and we do not have jurisdiction over this argument.

Dominguez-Pulido's second argument, by contrast, presents a colorable legal question appropriate for de novo review. He claims, as he did below, that his fear of persecution bears a nexus to his membership in a particular social group—a group made up of individuals deported from the United States who have money or who are perceived to have money, and who have family members in the United States who could pay ransom. He contends that this nexus qualifies him as a refugee and compels a grant of asylum.

---

law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Asylum requires the petitioner to demonstrate, at a minimum, that he has a legitimate fear of persecution. *Shou Wei Jin v. Holder*, 572 F.3d 392, 394–95 (7th Cir. 2009). The Attorney General has

> discretionary authority to grant asylum to an alien who qualifies as a "refugee" because he or she "is unable or unwilling to avail himself or herself of the protection of [his or her native country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."

*Id.* (alteration in original) (citing 8 U.S.C. § 1101(a)(42)). The petitioner can meet his or her burden by proving either past persecution or a well-founded fear of future persecution. *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 671 (7th Cir. 2005). A petitioner must present credible and specific evidence that he or she will suffer persecution upon return to his or her native country. *Id.* at 672.

As the Board has explained, "'[t]he phrase persecution on account of membership in a particular social group' [has been] interpreted to mean 'persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic.'" *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 230–31 (BIA 2014) (quoting *Matter of Acosta*, 19 I. &. N Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987)). "The common characteristic that defines the group must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* at

231 (citation and internal quotation marks omitted). Although the Board has made adjustments to its definition of "particular social group" over the years, "the common immutable characteristic requirement set forth [in *Matter of Acosta*] has been, and continues to be, an essential component of the analysis." *Id.*; *see also Tapiero de Orejuela*, 423 F.3d at 672.

In addition to identifying past or feared persecution on account of membership in a particular social group, the applicant for asylum must establish a "nexus" between any past or feared harm and that membership. *See M-E-V-G-*, 26 I. & N. Dec. at 242. In other words, the petitioner must show that he or she "is persecuted 'on account of' membership in a particular social group." *Id.*

We agree with the IJ and the Board that Dominguez-Pulido has failed to establish a nexus between his fear of persecution and a ground for protection. *See id*. Dominguez-Pulido's proposed social group is not cognizable as a ground for protection because its primary characteristic is wealth or perceived wealth, specifically the ability to pay a ransom. *See Tapiero de Orejuela*, 423 F.3d at 672 (noting that wealth, standing alone, is not an immutable characteristic of a cognizable social group). Moreover, Dominguez-Pulido's attempt to narrow his proposed group by adding the trait of "being deported from the U.S." does not render his group cognizable. *See Matter of W-G-R-*, 26 I. & N. Dec. 208, 223 (BIA 2014) ("Deportees are too broad and diverse a group to satisfy the particularity requirement for a particular social group … ."). Thus, Dominguez-Pulido fails to show that he is entitled to asylum.

With regard to his request for withholding of removal, Dominguez-Pulido again claims that his fear of persecution

bears a nexus with his membership in a particular social group. The standard for withholding of removal requires the petitioner to show a "clear probability" of persecution. *Shou Wei Jin*, 572 F.3d at 395 (explaining that the standard for withholding of removal is higher than the standard for asylum). Dominguez-Pulido contends that the IJ and the Board erred by concluding that being a person who was deported from the United States who has money or who is perceived to have money, and who has family members in the United States who could pay ransom, is not an immutable characteristic. For the reasons outlined above, this argument misses the mark and Dominguez-Pulido fails to meet his burden under the more stringent standard for withholding of removal.

Further, Dominguez-Pulido argues that the IJ and the Board erred by denying him CAT protection. The record indicates that Dominguez-Pulido applied for both withholding of removal and deferral of removal under Article III of CAT. Withholding of removal under CAT is a final remedy subject to the jurisdictional limitation under § 1252(a)(2)(C). Because Dominguez-Pulido's appeal of the Board's denial of CAT protection amounts to a challenge to the factual conclusions undergirding the decisions of both the IJ and the Board, we do not have jurisdiction over this claim.

### 2. Eighth Amendment Claim

Dominguez-Pulido next contends that his removal from the United States would violate the Eighth Amendment's prohibition on excessive fines. Specifically, he asserts that removal is equivalent to a sentence of life in exile, which he claims is disproportionate to his conduct. He also takes issue with the Board's response to this argument, which cited this Court's decision in *Zamora-Mallari v. Mukasey*, 514 F.3d 679

(7th Cir. 2008). He says that *Zamora-Mallari* is based upon the "cruel and unusual punishment" clause of the Eighth Amendment rather than the "excessive fine" clause.

Dominguez-Pulido's Eighth Amendment argument does not constitute a colorable constitutional claim: We held explicitly in *Zamora-Mallari* that a removal order is "not a 'fine,' and thus the Excessive Fine Clause of the Eighth Amendment does not apply." *Id.* at 695. *Zamora-Mallari* is indistinguishable from the case at hand and therefore binding on our analysis. Accordingly, we do not have jurisdiction over this claim.

### 3. Due Process Claim

Finally, Dominguez-Pulido contends that he did not receive a fundamentally fair proceeding before an impartial adjudicator. We conclude that he does not present a colorable constitutional argument over which we have jurisdiction. Dominguez-Pulido alleges that the IJ violated his due process rights in various ways, including by failing to advise him that he had the right to counsel at no expense to the government, and by failing to advise him that he would have a "reasonable opportunity to examine and object to the evidence against him and to present evidence on his own behalf, and to cross-examine witnesses presented by the government." He further alleges that his due process rights were violated because he was arrested without probable cause or a warrant and was not properly advised of his rights, and because he was in immigration custody during his hearing.

We have held that aliens present in the United States are entitled to due process, including in deportation proceedings. *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). "Due

process requires that an applicant receive a full and fair hearing which provides a meaningful opportunity to be heard." *Id.* Although the Supreme Court "has never specifically defined the requirements of due process in a deportation hearing, Congress has set forth minimal procedural requirements including, notably, the reasonable opportunity to examine the evidence and to present witnesses, and a decision based on reasonable, substantial, and probative evidence." *Podio v. I.N.S.*, 153 F.3d 506, 509 (7th Cir. 1998).

Nonetheless, Dominguez-Pulido's allegations present the sort of "unfocused argument that we have deprecated." *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011). Although he claims that the IJ failed to provide him with all process required by statute and regulations, he does not contend that any of the governing rules is unconstitutional. *See id.* As we noted in *Portillo-Rendon*, "[i]t is appropriate to consider the Constitution only if the statute and regulations are deficient." *Id.*

The record also leads us to conclude that Dominguez-Pulido received a full and fair hearing. Dominguez-Pulido was represented by counsel throughout his removal proceeding and had the opportunity to challenge the charges by presenting testimony from himself and his brother, as well as exhibits in support of his applications for relief. He does not claim that he was prevented from presenting his case or that the IJ excluded significant testimony. Dominguez-Pulido had a meaningful opportunity to be heard, and both the IJ and the Board decided his case based on detailed analyses of the evidence. Moreover, Dominguez-Pulido's claims that he was arrested without probable cause and was not advised of his rights are wholly unsubstantiated. He does not explain why there was

no probable cause for his arrest by immigration officers. In addition, the Form I-213 shows that Dominguez-Pulido was served with a "Notice of Rights" upon his apprehension by immigration authorities.

Because Dominguez-Pulido fails to present a colorable due process claim, we do not have jurisdiction.

### III. Conclusion

For the foregoing reasons, we DENY the consolidated petitions for review.