In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3225

JOSE ALBERTO RIVERA,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A092-513-383

SUBMITTED DECEMBER 21, 2016 — DECIDED JANUARY 12, 2017

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. Jose Alberto Rivera, a 58-year-old citizen of El Salvador who has resided unlawfully in the United States for the last 35 years because he immigrated illegally and has never adjusted his status to that of a citizen or lawful permanent resident, petitions us for review of an order of the Board of Immigration Appeals upholding an

immigration judge's denial to Rivera of asylum, withholding of removal, or relief under the Convention Against Torture, and affirming the immigration judge's issuance of an order removing (deporting) Rivera from the United States to El Salvador.

In 2014, after having fought off a previous attempt by the government to deport him, Rivera had been convicted of possessing a "forged instrument" and the government had reopened removal proceedings. He responded, as noted in the preceding paragraph, basing his response on his fear that gangs in El Salvador would seek to kidnap or extort him because they would perceive him as wealthy, owing to his long residence in the United States.

He told the immigration judge that the gangs "do not care about anything" and "always" harm innocent civilians, whether they have money or not. Yet he conceded that nobody in El Salvador had ever threatened him or his family, while recounting the experience of an unidentified Salvadoran national with whom he had been detained who told Rivera of having been removed to El Salvador, where members of the MS-13 gang had "threatened" him after he rebuffed their attempts to recruit him to traffic drugs. Yet no harm had befallen him. Rivera also testified that about five years ago his sister, who has lived in the United States since the 1970s, visited El Salvador for a few days—without incident. And although he expressed uncertainty about whether the Salvadoran government would be able to protect him from the gangs, he denied any fear that he would be harmed by the government itself.

The immigration judge noted that the State Department's "country condition" reports on El Salvador "do not show

that street gangs have specifically targeted El Salvadoran citizens returning from the United States because of their perceived wealth," and noted (essentially repeating Rivera's statement) that nobody in El Salvador had ever threatened him or his family and that there was no reason to think that the Salvadoran government would torture him or acquiesce in his being tortured by nongovernment actors. And remember that his sister and the unidentified Salvadorian detainee, each of whom had visited El Salvador after living in the United States, had incurred no harm there.

The Board of Immigration Appeals agreed with the Immigration Judge's assessment of Rivera's claims, which were weak. Really all he argued was that as a long-time resident of the United States he would be perceived in El Salvador as wealthy. That may be correct, and we are dubious (see the concurring opinion in *Gutierrez v. Lynch*, 834 F.3d 800, 807 (7th Cir. 2016)) of the proposition announced in some cases that

> the status of being a member of a group made up of individuals deported from the United States who, having lived in this country for many years, either have money or are believed to have money and have long-established ties to this country, and who for any of these reasons might be able to pay ransom, nevertheless can't be deemed members of a "social group" authorized to obtain relief from deportation because of threats to the life or safety of the group's members.

But when this is the claim the petitioner must submit evidence supporting it, as the probability that any given member of such a group would be held for ransom might be exceedingly low.

Although the majority opinion in *Gutierrez* rejected the petitioner's argument that he was in danger of persecution because he belonged to a social group consisting of "Mexican nationals who have lived in the U.S. for many years and are perceived as wealthy upon returning to Mexico," 834 F.3d at 805, Gutierrez like Rivera had not presented convincing evidence that he was in any such danger—and furthermore the Immigration Court had found that *if* he was in danger of persecution if he returned to the part of Mexico in which he had lived before immigrating to the United States "he could avoid [the] harm by relocating to another part of Mexico." *Id.*

*Dominguez-Pulido v. Lynch*, 821 F.3d 837 (7th Cir. 2016), was a similar case. The petitioner feared persecution if returned to his country of origin because he could afford to pay a ransom, or at least his captors would *believe* that he (or his relatives in the United States) could afford to pay a ransom. But our opinion does not indicate that he had any reason to believe that anyone would force him to pay a ransom. So he lost, as did Gutierrez and as must Rivera as well.

The point, which is equally applicable to the present case, is that members of well-to-do coteries or established expatriate families are not, so far as the record of this case reveals, frequent targets of violence in El Salvador. And unlike applicants for relief in cases such as *Arrazabal v. Lynch*, 822 F.3d 961 (7th Cir. 2016), Rivera failed to present any evidence that *he* is a likely target of violence, despite the likelihood of his being thought wealthy (though by whom is not indicated) by virtue of his long residence in the United States.

A disturbing feature of the case, however, is the very high crime rate in El Salvador. See, e.g., Roque Planas, "How

El Salvador Became the World's Most Violent Peacetime Coun-
try," *WorldPost*, March 4, 2016, www.huffingtonpost.com/
entry/el-salvador-most-violent-country_us_56d9e239e4b0000
de4047fbe. (Actually Honduras is believed to have the highest
homicide rate in the world—90.4 homicides per 100,000
people; the international average is 6.2 homicides per
100,000 people. U.N. Office on Drugs and Crime, *Global
Study on Homicide 2013*, pp. 12, 24 fig. 1.5, www.unodc.org/
documents/gsh/pdfs/2014_GLOBAL_HOMICIDE_BOOK_
web.pdf.) But Rivera has not presented convincing evidence of
how safe or unsafe *he* will be in El Salvador.

We note finally, for its possible relevance in future cases,
that what doesn't matter in the case of an illegal immigrant
resisting removal because of fear of persecution is whether
gangs in El Salvador, or whatever the immigrant's country
of origin is, are wrong in thinking that anybody who's lived
in the United States is likely to be wealthy or have wealthy
American connections. If that's what the gangs think, and if
(a big if, which requires evidence) as a result they hold de-
portees from the U.S. for ransom and kill them if it isn't paid,
those deportees are being subjected to persecution. We don't
think either a court or the immigration agencies could ra-
tionally deny that. But it isn't this case.

AFFIRMED