In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 17-1047

RENE A. LOPEZ,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A208-149-697

_____

ARGUED JUNE 2, 2017 — DECIDED JUNE 13, 2017

_____

Before FLAUM, EASTERBROOK, and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. Rene Alonzo Lopez, a.k.a. Luis Fuentes Alonso, petitions for review of the denial of his application for withholding of removal. We dismiss the petition for lack of jurisdiction.

## I. Background

Lopez is a native and citizen of El Salvador who first entered the United States without inspection in or around 1996. In 1997, he was convicted of felony possession of marijuana in violation of North Carolina General Statute § 90-95(d)(4).

In 2015, the Department of Homeland Security commenced removal proceedings against Lopez, and filed a Notice to Appear with the immigration court charging that he was removable on two grounds: (1) as an alien present in the United States without being admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i); and (2) as an alien convicted of a controlled substance law, *see* 8 U.S.C. § 1182(a)(2)(A)(i)(II). Lopez admitted the allegations in the Notice to Appear; and, after the immigration judge sustained the removal charges, Lopez filed an application for asylum and withholding of removal.

Lopez testified before the immigration judge that in 2007, Lopez and his cousin decided to form an agricultural business making feed for livestock in El Salvador. Lopez sent money from the United States as an investment and in order to rent space. He returned to El Salvador in 2011 or 2012 to expand the business to another location in a different village. Lopez stated that approximately three months after the new branch opened, he received a cell phone from a child, and the local leader of the Mara Salvatrucha ("MS-13") gang called to "start charging rent." (Apparently the area in which the new branch was located was gang-controlled.) The gang leader told Lopez, "[Y]ou already know what happens to people who don't pay." Lopez understood this to mean that the gang would kill, injure, or kidnap someone if Lopez didn't pay the "rent."

Lopez initially complied with the gang's demands, depositing thirty dollars per week into a specified bank account; but after a month or a month and a half, he had to close the business. He explained to the immigration judge that once people learn that a gang controls a business, the business suffers reputational harm and loses standing in the community. Lopez then returned to the United States. Approximately six months later, Lopez sent money to his nephew, who was being pressured in El Salvador to join a gang, to help him travel to the United States.

MS-13 has never harmed Lopez's family in El Salvador. Additionally, Lopez explained that he had not applied for asylum earlier because he had not known that he could.

## A. Immigration judge's decision

On May 19, 2016, the immigration judge denied Lopez's application for asylum and withholding of removal. Lopez had not filed his asylum application within one year of his last entry in 2012, as is required under 8 U.S.C. § 1158(a)(2)(B); and the immigration judge found that Lopez's lack of knowledge about the asylum application process did not constitute changed or extraordinary circumstances excusing his failure to timely file. Lopez was thus statutorily ineligible for asylum.

In denying withholding of removal, the immigration judge found that Lopez's fear of persecution by MS-13 was "[n]either objectively reasonable [n]or on account of any of the statutorily enumerated grounds," as the record did not support the conclusion that any future mistreatment by MS-13 would be on account of Lopez's race, religion, nationality, political opinion, or social group membership. The immigration judge observed that neither "(1) individuals who oppose

gang and other criminal activities due to their personal (e.g., religious and/or moral) beliefs," nor "(2) individuals who have lived in the United States for many years and who are perceived by drug cartels, criminal organizations, and gangs to have money upon their return" comprised sufficiently particular groups to be cognizable social groups for purposes of withholding of removal. The immigration judge also found "no evidence that gang members would be concerned with any characteristic of their victims other than their wealth."

### B. Board of Immigration Appeals's decision

On June 16, 2016, Lopez appealed the immigration judge's denial of withholding of removal to the Board of Immigration Appeals ("Board"), claiming that MS-13 would target Lopez based on its perception of him as a "wealthy business owner who failed to comply with [the gang's] demands for rent," and submitting that the government of El Salvador is unable to control the MS-13 gang or protect its victims. He requested that the Board either grant him withholding of removal or remand his case so that he could introduce additional evidence.

On December 8, 2016, the Board dismissed Lopez's appeal, agreeing with the immigration judge that Lopez had not established that it was more likely than not that his life or freedom would be threatened based on a protected ground. The Board explained in relevant part that, "[a]lthough wealth can form a basis of a particular social group if it is combined with other 'distinguishing markers,' no evidence was presented that the gang members in this case would be concerned with any character[istic] other than wealth." The Board added that a "general fear of crime, extortion, or violence," and Lopez's actions in helping his nephew escape El Salvador, likewise were not bases for withholding of removal, and rejected

Lopez's claim that the Salvadoran government is unable or unwilling to control MS-13. Finally, the Board denied Lopez's request for remand to present additional evidence, explaining that he "did not submit any evidence, specify the evidence that would be presented, or explain why the new evidence could have been presented in the proceedings before the Immigration Judge."

This petition followed.

## II. Discussion

Because Lopez was found removable based on his controlled-substance conviction and did not challenge this finding before the Board or this Court, the criminal alien bar of 8 U.S.C. § 1252(a)(2)(C) applies. *See, e.g., Gutierrez v. Lynch*, 834 F.3d 800, 804 (7th Cir. 2016); *Aguilar-Mejia v. Holder*, 616 F.3d 699, 703 (7th Cir. 2010) ("Congress has stripped courts of appeals of their jurisdiction to review most issues related to removal orders for aliens convicted of certain crimes, including controlled-substance offenses ….") (citations omitted). Although we thus generally lack jurisdiction to review Lopez's final order of removal, we retain jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review (de novo) questions of law and constitutional claims. *See, e.g., Isunza v. Lynch*, 809 F.3d 971, 973 (7th Cir. 2016); *Antia-Perea v. Holder*, 768 F.3d 647, 658–59 (7th Cir. 2014) (citation omitted). We likewise review de novo questions concerning our jurisdiction. *E.g., Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012) (citation omitted).

Withholding of removal requires the petitioner to establish that it is more likely than not that he would be persecuted in the country of removal "because of [his] race, religion, nationality, membership in a particular social group, or political

opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011) (citation omitted). The inquiry focuses on "whether the danger flows from an ongoing violent struggle affecting the population in a relatively *undifferentiated* way or if danger exists on account of a protected ground." *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 672 (7th Cir. 2005) (quoting *Ahmed v. Ashcroft*, 348 F.3d 611, 619 (7th Cir. 2003)). Lopez raises two legal challenges on appeal: (1) that individuals perceived to be wealthy business owners, or former members of that group who failed to comply with extortion demands, are both cognizable and particular social groups under existing precedent; and (2) that he established, and the Board failed to consider, that the Salvadoran government is unable or unwilling to control MS-13.[1]

The government responds, however, that neither of these arguments invokes our jurisdiction because Lopez has not challenged the Board's dispositive holding on nexus—that is, that Lopez failed to establish a likelihood of persecution in El Salvador based on membership in a protected group. 8 U.S.C. § 1231(b)(3)(A); *see also Rivera v Lynch*, 845 F.3d 864, 866 (7th Cir. 2017); *Shaikh v. Holder*, 702 F.3d 897, 902 (7th Cir. 2012). Thus, the government reasons, even assuming Lopez could

---

[1] As to the second issue, Lopez alternatively argues that even if the Board did consider this evidence, this Court should revisit our conclusion that 8 U.S.C. § 1252(a)(2)(D)'s preservation of jurisdiction does not extend to such issues of mixed law and fact. *See Adame v. Holder*, 777 F.3d 390, 391 (7th Cir. 2015) (Hamilton, J., concurring in denial of petition for rehearing *en banc*). We decline to do so, since, as the following analysis makes clear, there would be "no reasonable prospect of changing the outcome of [the] petition for judicial review." *Id.*

prevail on either or both of his arguments, the agency's denial of withholding of removal would still stand.

Lopez claims that the government is misreading the immigration judge's and Board's decisions,[2] which, according to him, focused on the requisite particularity of a social group, and not on nexus per se. The government relies on: (1) the Board's statement that, "[a]lthough wealth can form a basis of a particular social group if it is combined with other 'distinguishing markers,' no evidence was presented that the gang members in this case would be concerned with any character[istic] other than wealth"; and (2) the immigration judge's finding that, "[i]n this case, … the danger to the respondent of robbery or extortion by gangs or other criminal elements is shared by all members of [Salvadoran] society who have or are perceived to have wealth, and there is no evidence that the risk faced by the respondent is distinct because of the time he lived in the United States." While it's true that both statements come from the agency's analyses with respect to social groups, crucially, they both center on wealth—and only wealth—as the pertinent marker linked to persecution by MS-13. And as "wealth, standing alone, is not an immutable characteristic [and thus may not be the primary characteristic of a cognizable group]," *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 845 (7th Cir. 2016) (citing *Tapiero*, 423 F.3d at 672), both the immigration judge and Board did make dispositive, no-nexus findings.

---

[2] Where the Board both adopts and supplements the immigration judge's decision, both orders are subject to review by this Court. *E.g.*, *Halim v. Holder*, 755 F.3d 506, 511 (7th Cir. 2014) (citations omitted).

Lopez alternatively argues that, to the extent the Board addressed the nexus element, the Board failed to consider evidence, raising an issue of reviewable legal error. He claims that because he experienced extortion and threats from MS-13 as a consequence of his business ownership, a conclusion of no nexus "ignores [his own] credible testimony." His argument misses the point. It's true that the immigration judge found Lopez generally credible, and observed that "there is some support" for Lopez's fears of MS-13 given the gang's proclivity toward violence. However, both the immigration judge and Board concluded that it wasn't Lopez's business ownership, or his non-compliance with the gang's demands, that mattered for purposes of the withholding analysis. It was simply his (perceived) wealth. *See generally In re V-T-S-*, 21 I. & N. Dec. 792, 792 (BIA 1997) (holding that an applicant's wealth, in the absence of evidence to suggest other motivations, will not support a finding of persecution within the meaning of the Immigration and Nationality Act). Lopez thus failed to establish that his life or freedom would be threatened based on a protected ground.

"For [§ 1252(a)(2)(D)] review to be permissible, … the legal conclusion must make a difference, as otherwise the court would be rendering an advisory opinion." *Jankovic v. Lynch*, 811 F.3d 265, 266 (7th Cir. 2016). As the agency's (no-)nexus finding is dispositive of the decision on withholding of removal, we need not and do not consider either of Lopez's arguments as to his proposed social groups or the ability or willingness of the Salvadoran government to control MS-13. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.") (citations omitted); *Lozano-Zuniga v. Lynch*, 832 F.3d

822, 828 (7th Cir. 2016) (finding it unnecessary to determine whether a given group was cognizable under the Immigration and Nationality Act given the immigration court's finding that petitioner "failed to establish that there is a clear probability that he would be subject to future danger because of his membership in this group").

### III. Conclusion

For the foregoing reasons, the petition for review of the Board's decision is DISMISSED for lack of jurisdiction.