NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2017
Decided October 4, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 16-3820

| | |
|---|---|
| IVAN GENTHOV PICHIMAROV, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A 089-849-278 |
| JEFFERSON B. SESSIONS III, Attorney General of the United States, *Respondent*. | |

**O R D E R**

Ivan Pichimarov, a 42 year-old Roma from Bulgaria, petitions for review of the denial of his application for withholding of removal, both statutorily and under the United Nations Convention Against Torture ("CAT"). But our jurisdiction to consider this petition is limited by 8 U.S.C. § 1252(a)(2)(C), because Pichimarov is removable for having committed a crime involving moral turpitude. Our jurisdiction thus is confined under 8 U.S.C. § 1252(a)(2)(D) to questions of law and colorable constitutional claims, and Pichimarov raises none, so we dismiss the petition.

Pichimarov fled Bulgaria and entered the United States without inspection in 1996. In 2000 he was convicted in Arkansas of felony theft of property. In 2009 the

Department of Homeland Security started removal proceedings, charging him as removable as an alien present in the United States without being admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and as an alien convicted of a crime involving moral turpitude, *see id.* § 1182(a)(2)(A)(i). Pichimarov admitted that he was removable on both grounds but applied for asylum,[1] statutory withholding of removal, and withholding of removal under CAT.

At a hearing before the immigration judge, Pichimarov testified that Bulgarians discriminate against the Roma. But according to Pichimarov, the biggest threat to Roma was the organized crime groups in Bulgaria—collectively called "grupirovki"—who harassed and beat Roma and forced them to transport illegal goods. Pichimarov recounted that he once refused a local crime leader who had asked him to transport cargo illegally throughout Europe, and the leader warned that he might "disappear" if he did not accept the job. Pichimarov reported the threat to the police, who did nothing, so he moved to a different city in Bulgaria and hid at his aunt's house for six or seven months before fleeing to the United States.

Pichimarov testified that he feared returning to Bulgaria because organized crime now treated Roma more harshly than when he left. He recalled that portions of money transfers he sent back to his parents had been withheld as a tax by the banks, which were all controlled by organized crime. Pichimarov also testified that the local crime groups still controlled the police, who, he believed, would arrest him as soon as he returned to Bulgaria, extort him for money, and beat him if he refused.

The IJ denied Pichimarov's application. First the IJ found his testimony "far too speculative and not persuasive" and his corroborating evidence insufficient to support "even a subjective fear" of returning to Bulgaria. The IJ also faulted Pichimarov for not obtaining affidavits from his family and not explaining whether the groups who had threatened him still existed. Moreover, his testimony conflicted with other evidence in the record that the Bulgarian government sought to assist the Roma through, among other things, the construction of new housing. In sum, Pichimarov had not established an individualized fear—or alternatively, a pattern or practice—of persecution against the Roma.

---

[1] Pichimarov's asylum application was rejected as time-barred because he filed it well over a year after arriving in the United States. He does not seek review of that decision in this petition, so we do not discuss it further.

The Board of Immigration Appeals dismissed Pichimarov's appeal in part and remanded in part. The Board upheld the denial of Pichimarov's claims for asylum and withholding of removal, pointing out that he failed to provide reasonably available corroborating evidence, such as statements from family members. The Board agreed with the IJ that Pichimarov did not introduce evidence to show that he would face persecution in Bulgaria: he had not explained why the criminal group, after so many years, still would want to harass him nor did he substantiate his fear that he would be arrested or extorted upon return. Additionally, as the IJ found, Pichimarov did not establish a "nexus" between his ethnicity and any potential future harm. The Board also agreed that there was no pattern or practice of persecution of ethnic Roma: the background evidence on Bulgaria did not reflect that the government systematically tried to harm Roma or that the government tolerated persecution against them. The Board, however, accepted Pichimarov's argument that the IJ had conflated the analysis of his claims for statutory withholding of removal and withholding under CAT, and so remanded the case for the IJ to make the requisite factual and legal findings.

On remand the IJ denied Pichimarov's CAT claim because he failed to show that the government would acquiesce in his torture. The IJ concluded that the harm he feared was "too remote and attenuated" because more than fifteen years had passed since he had last been threatened.

The Board dismissed Pichimarov's second appeal. It agreed with the IJ that the threats were dated, particularly in the absence of evidence that the local crime groups had any "continued interest" in him. And Pichimarov's submitted reports of "generalized violence" were not enough to establish eligibility under CAT.

In his petition for review, Pichimarov challenges the denial of his application for statutory withholding, asserting that the Board overlooked certain evidence and applied an incorrect legal standard. He also challenges the denial of his withholding claim under CAT, generally disputing the Board's conclusion that he did not meet his evidentiary burden of showing a likelihood he would be tortured.

The government asserts that we should dismiss the petition for lack of jurisdiction on the ground that Pichimarov has not raised any "colorable constitutional or legal claim." We generally lack jurisdiction to review a final removal order against a criminal alien, like Pichimarov, who is removable for having committed an offense covered in 8 U.S.C. § 1182(a)(2), unless the alien raises a constitutional claim or question

of law. *See* 8 U.S.C. § 1252(a)(2)(C–D); *Guzman-Rivadeneira v. Lynch*, 822 F.3d 978, 982 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 644 (2017).

Pichimarov contests the application of this jurisdictional bar by arguing that the orders denying him withholding of removal and CAT protection are not final orders of removal. He is mistaken. A "final order of removal" is "not only the actual order of deportation, but all orders closely related to the deportation proceeding," including those "entered during the proceeding." *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) (quoting *Carvajal-Munoz v. INS*, 743 F.2d 562, 566 (7th Cir. 1984)). The denial of Pichimarov's application for withholding of removal—although technically entered after his removal order—nevertheless was entered *during* his immigration proceedings and was "closely related" to his removal, and thus comprised part of his final order of removal. We routinely have concluded that § 1252(a)(2)(C) bars our review of orders denying withholding of removal, both statutorily and under CAT. *See, e.g., Lopez v. Sessions*, 859 F.3d 464, 466 (7th Cir. 2017); *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 843, 845 (7th Cir. 2016); *Rosiles-Camarena v. Holder*, 735 F.3d 534, 536 (7th Cir. 2013).

Pichimarov also contends that we have jurisdiction to review the denial of *deferral* of removal under CAT—an order not considered final. *See Issaq v. Holder*, 617 F.3d 962, 970 (7th Cir. 2010). But he was ineligible for deferral of removal because his application for withholding was not subject to mandatory denial; withholding and deferral of removal are mutually exclusive remedies, with deferral available only if the request for withholding must be automatically denied. 8 C.F.R. § 1208.17(a); *see Gutierrez v. Lynch*, 834 F.3d 800, 804 n.2 (7th Cir. 2016); *Wanjiru v. Holder*, 705 F.3d 258, 263–64 (7th Cir. 2013). Pichimarov argues that withholding and deferral of removal are similar forms of relief and should be treated alike. Deferral, however, is "a more temporary form of protection" that can be terminated more quickly and easily than withholding and thus is "like an injunction." *Wanjiru*, 705 F.3d at 264; *see also Issaq*, 617 F.3d at 969. It therefore is a "unique remedy that requires a distinct jurisdictional analysis." *See Moral-Salazar v. Holder*, 708 F.3d 957, 962 (7th Cir. 2013).

Because Pichimarov mounts no legal or constitutional challenge to his removal order, we lack jurisdiction to review his petition. And while he does assert—with regard to his statutory withholding-of-removal claim—that the Board overlooked evidence or used the incorrect legal standard, he does not develop these arguments, which we regard as improper attempts to "manufacture a legal dispute over a

disagreement on the facts," *Jawad v. Holder*, 686 F.3d 400, 404 (7th Cir. 2012). Accordingly, we **DISMISS** the petition for lack of jurisdiction.