In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-1025

GABRIELA ESCOBEDO MARQUEZ and DIANA J. SANCHEZ ESCOBEDO,

*Petitioners*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent*.

———————————

Petition for Review of an Order of the Board of Immigration Appeals.
Nos. A208-592-740 and A208-592-741.

———————————

ARGUED JULY 7, 2020 — DECIDED JULY 13, 2020

———————————

Before SYKES, *Chief Judge*, and EASTERBROOK and KANNE, *Circuit Judges*.

PER CURIAM. Gabriela Escobedo Marquez and her minor daughter, Diana Julieta Sanchez Escobedo, citizens of Mexico, petition for review of the denial of their application for asylum under the Immigration and Nationality Act. Escobedo Marquez sought relief based on threats of physical violence she had received because of her gay sexual orientation. An immigration judge, and later the Board of Immigration

Appeals, concluded that threats to Escobedo Marquez's life did not rise to the level of past persecution, and that she could not show that she faced a well-founded fear of future persecution if she returned to Mexico. Because substantial evidence supports the agency's decision, we deny the petition for review.

## BACKGROUND

Escobedo Marquez and her daughter Diana (12 years old at the time) applied for admission into the United States at the California border in September 2015. The next day the Department of Homeland Security initiated removal proceedings, and, at a hearing two months later, Escobedo Marquez conceded their removability under 8 U.S.C. § 1182(a)(7)(A). She then applied for asylum and withholding of removal based on threats she had received because of her sexual orientation and her belief that she could not live as an openly gay woman in Mexico without being persecuted.

At another hearing before the IJ, Escobedo Marquez testified that she grew up in a town in central Mexico in a strict Catholic family. Because of her family's religious values and fear of "rejection from society," she did not accept her identity as a gay woman until 2013, when she was in her mid-twenties. Before then, Escobedo Marquez had been in a long-term relationship with a man with whom she had her daughter (they also had a son who was born in the United States in 2006). After Escobedo Marquez embraced her sexual orientation, she began secretly dating women (in her hometown).

About two years after she began dating women, Escobedo Marquez received written threats (via texts, social media, and letters) of physical harm to herself and her children. She

testified that one of those five threats warned that the perpe-
trator "would cut off a piece of [her] skin for every hickey
[she] left on his wife, and that [she] should watch out for [her]
kids; that something bad could happen to them." The threats
left her frightened. Although she did not know for sure, she
suspected that an ex-girlfriend had sent them (posing as a
man) because she was jealous of Escobedo Marquez's rela-
tionship with another woman. Escobedo Marquez believed
that the threats would be carried out, so she changed her
phone number and stopped going out of her house unless
necessary; she also reported the threats to the police, who did
nothing to help her. The threats stopped within four months.

Her current partner, Jasmin Gutierrez Granados, testified
at the hearing about the fear Escobedo Marquez felt from the
threats. Gutierrez Granados verified that Escobedo Marquez
became so frightened from the threats that she stopped leav-
ing her home unless necessary. Gutierrez Granados, who
lived as an openly gay woman in their Mexican hometown,
then recounted instances where she and her friends had been
assaulted because of their sexuality. In her view, homophobia
had worsened in Mexico despite legislation for same-sex mar-
riage.

Escobedo Marquez also testified about the harm she fears
her family will face if they are forced to return to Mexico.
First, she is concerned that her sexual orientation would limit
her opportunities to work in Mexico (and ability to support
her family)—a concern that she supported with testimony
that some of her gay friends had been "exploited" by their
employers. Second, she worries that if she lives openly as a
gay woman, as she wants to, other children might bully her
daughter Diana for having a gay mother. During the

pendency of this case, Diana had attempted suicide because her peers at school had bullied her, though for reasons unrelated to her mother's sexual orientation. Escobedo Marquez fears that further bullying—like children harassing Diana for having a gay mother—could trigger Diana again to try to take her own life.

The IJ denied Escobedo Marquez's applications. She found Escobedo Marquez credible and characterized her experiences in Mexico as "unsettling," but concluded that the threats went unfulfilled and did not inflict substantial harm, so they were not sufficiently imminent or severe to establish persecution. The IJ further found that these threats stemmed not from her status as a gay person but from a personal dispute with an ex-girlfriend, and personal disagreements cannot be the basis for an asylum claim. Finally, Escobedo Marquez had not shown a well-founded fear of future persecution.

The IJ then concluded that her fear of discrimination and harassment did not rise to the level of persecution and the violence that targeted the LGBT community in Mexico was "not sufficiently 'systematic, pervasive, or organized' to constitute a pattern or practice of persecution, particularly in light of the positive developments." And because Escobedo Marquez could not establish asylum eligibility, she likewise could not meet the higher standard for withholding of removal.

The Board of Immigration Appeals upheld the IJ's decision. It agreed with the IJ's finding on past persecution, concluding that despite the genuine fear Escobedo Marquez felt from the threats, they "were unaccompanied by any 'significant physical … harm … or non-physical harm of equal gravity'" that would constitute persecution. The Board further

agreed that Escobedo Marquez could not establish the requisite nexus between the threats and her "LGBT membership," given the IJ's finding that the threats had been made by a jealous ex-girlfriend and not motivated by her sexual orientation.

As for Escobedo Marquez's claim of a well-founded fear of future persecution, the Board agreed with the IJ that her expressed fear of discrimination and harassment fell short of the standard for persecution, and that the record evidence did not reflect a pattern or practice of persecution, particularly in light of reports of "positive developments in the law protecting the rights of LGBT persons in Mexico." The Board also rejected her argument that LGBT persons in Mexico suffered severe economic deprivation rising to the level of economic persecution. And, although the Board characterized Escobedo Marquez's daughter's suicide attempt as troubling, it found no evidence to link Escobedo Marquez's sexual orientation to a risk that her daughter would be bullied or attempt suicide again in the future.

## ANALYSIS

On petition for review, Escobedo Marquez challenges the conclusion that she did not adequately demonstrate past persecution based on her membership in a protected group. *See* 8 C.F.R. § 1208.13(b)(1). Because the Board affirmed the IJ's decision, adopting its reasoning and supplementing it with the Board's own, we review both decisions. *Plaza-Ramirez v. Sessions*, 908 F.3d 282, 285 (7th Cir. 2018). "We review legal determinations *de* novo and findings of fact for substantial evidence." *Id.* Escobedo Marquez first takes issue with the IJ's and Board's determination that the threats she received constitute harassment but not persecution. She asserts that the genuine and extreme fear she felt upon receiving the threats

(e.g., that her skin would be cut, that something "bad" would happen to her children) establishes severe "nonphysical harm" rising to the level of persecution.

Substantial evidence supports the Board's conclusion that the threats were not so extreme as to constitute persecution. True, persecution can be shown by "nonphysical harm" of a gravity equivalent to "*significant* physical force against a person's body," *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011), but threats alone can compel a finding of persecution "only in the most extreme circumstances, such as where they are of a most immediate or menacing nature or if the perpetrators attempt to follow through on the threat[s]," *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006). The five anonymous threats described by Escobedo Marquez—as unsettling as they are—do not describe sufficiently grave harm that would compel a finding of past persecution. She was not physically harmed, and no evidence suggests that the sender attempted to follow through on the threats. *See Orellana-Arias v. Sessions*, 865 F.3d 476, 487 (7th Cir. 2017) (finding of past persecution not compelled when petitioner received unfulfilled death threats and was physically attacked but left with only minor injuries); *Mema v. Gonzalez*, 474 F.3d 412, 418 (7th Cir. 2007) (finding of past persecution not compelled when petitioner was abducted at gunpoint, detained, and then physically abused); *Hernandez-Baena v. Gonzalez*, 417 F.3d 720, 723 (7th Cir. 2005) (noting that "in general, unfulfilled threats do not" rise to the level of persecution). Moreover, after the threats ceased in May 2015, Escobedo Marquez remained in Mexico for four additional months without further incident. *See Hernandez-Baena*, 417 F.3d at 723 (finding of past persecution not compelled when several months passed without further death threats).

Because substantial evidence supports the Board's finding regarding the absence of past persecution, we need not consider Escobedo Marquez's challenge to the IJ's and Board's conclusion that the central reason for the past persecution was not on account of a statutorily protected ground, here her membership in a particular social group. *See Lopez v. Sessions*, 859 F.3d 464, 468 (7th Cir. 2017).

As for her fear of future persecution, Escobedo Marquez contends that the IJ and the Board impermissibly ignored documentary evidence chronicling the significant and underreported violence that gay persons in Mexico face. This evidence, she maintains, corroborates a pattern or practice of persecution within the part of Mexico to which she would be likely to return. Under this test, she had to introduce evidence that state actors in Mexico perpetrated or tolerated "a systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group." *Georgieva v. Holder*, 751 F.3d 514, 523 (7th Cir. 2014) (internal quotation marks omitted) (quoting *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005)). She points to a 2016 State Department report on human rights in Mexico and four articles submitted by the government that spotlight evidence of homophobic violence.

Escobedo Marquez reads too much into these reports. Though the State Department country report and the articles reflect that gay persons are subjected to discrimination, harassment, and violence, these publications do not describe a level of mistreatment sufficiently extreme to constitute pervasive persecution. *See, e.g., Hernandez-Garcia v. Barr*, 930 F.3d 915, 920–21 (7th Cir. 2019) (finding that "violent crime, including a shocking level of violence against women," was insufficient to show systemic persecution of women).

These reports also do not suggest that the Mexican gov-
ernment is complicit in violence against gay people or "una-
ble or unwilling to take steps to prevent [it]." *N.L.A. v. Holder*,
744 F.3d 425, 440 (7th Cir. 2014). In fact, a contrary impression
emerges from evidence in the record—that the Mexican gov-
ernment has made substantial and positive developments in
the law for gay persons including a ruling from Mexico's Su-
preme Court legalizing gay marriage, an amendment to the
Constitution of Mexico prohibiting discrimination based on
sexual orientation, and federal laws protecting homosexuals
from discrimination. *See Mitreva*, 417 F.3d at 766 (rejecting
claim of pattern or practice of persecution against the Roma
ethnic minority in Bulgaria because of government's "serious
efforts" at reform). Substantial evidence supports the
agency's conclusion that Escobedo Marquez did not establish
a pattern or practice of persecuting people similarly situated
to her.

Escobedo Marquez additionally argues that the Board im-
properly considered her claim that she has a well-founded
fear of future economic persecution. Economic harm consti-
tutes persecution when it is deliberately imposed and results
in severe deprivation of economic opportunities. *See Koval v.
Gonzales*, 418 F.3d 798, 806 (7th Cir. 2005); *Capric v. Ashcroft*,
355 F.3d 1075, 1092–93 (7th Cir. 2004). In support of her claim
that she would face economic persecution upon her return,
she points to her testimony that her gay friends were "ex-
ploited" by their employers and to the State Department's hu-
man rights report that gay people in Mexico experience em-
ployment discrimination.

Substantial evidence also supports the Board's determina-
tion that she cannot establish a fear of economic persecution.

Escobedo Marquez testified that if she were to go back to Mexico, she would not be able to find a job as a carpenter—the type of work she did at age 14—because "those jobs are very hard to find these days." She also mentioned that she would not be able to "get a good job" because she does not "have a lot of education." Yet Escobedo Marquez admitted that is the situation for "everybody in Mexico." Finally, Escobedo Marquez testified that she could find a job "cleaning a house" but that job "doesn't pay very well." These statements, however, indicate that Escobedo Marquez, upon return to Mexico, would endure "[g]eneralized economic disadvantages" confronting the entire Mexican population; this does not rise to the level of persecution. *Capric*, 355 F.3d at 1093.

And Escobedo Marquez's vague testimony that her friends were "exploited" fares no better. This testimony provides no details that would support a conclusion that Escobedo Marquez would face severe economic deprivations upon her return to Mexico. *See id.*; *Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006) ("Economic harm, too, may be persecution if it is deliberately imposed as a form of punishment and it results in sufficiently severe deprivations").

Finally, Escobedo Marquez argues that the Board minimized her fear of future persecution by overlooking certain medical records in the aftermath of her daughter's suicide attempt. These records, she believes, may portend further harm if her daughter continues to be bullied. "[H]arm to an applicant's spouse or child constitutes persecution of the primary asylum seeker." *N.L.A.*, 744 F.3d at 432. But the Board did not ignore these records. It characterized Diana's suicide attempt as "very troubling" and "concern[ing]," but went on—

appropriately—to reject as speculative any prediction about the nature of Diana's future interactions with others owing to her mother's sexual orientation.

For these reasons, we DENY the petition for review.