In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-3297

JUANA HERNANDEZ-GARCIA, *et al.*,

*Petitioners*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent*.

---

Petition for Review of an Order of the Board of Immigration Appeals.
Nos. A208-190-985, A208-190-986, A208-190-987

---

ARGUED MAY 15, 2019 — DECIDED JULY 22, 2019

---

Before WOOD, *Chief Judge*, and EASTERBROOK and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. Juana Hernandez-Garcia is a citizen of Guatemala. She and two of her children, Brian and Yeniser Morales-Hernandez, entered the United States without proper documentation on August 29, 2015. They immediately received Notices to Appear for removal proceedings, but those Notices did not specify a date and time for their hearing. Later, when they nonetheless appeared before an immigration judge, they conceded removability but filed

requests for asylum, withholding of removal, and protection under the Convention against Torture. As we detail below, first the immigration judge and then the Board of Immigration Appeals rejected those requests and ordered removal. Hernandez-Garcia, on behalf of both her children and herself, has petitioned this court for review. We conclude that the Board's decision must be upheld, and so we deny their petitions for review.

## I

In Guatemala, Hernandez-Garcia and her two youngest children lived in the village of Chiantla, Huehuetenango. Her husband, Anacleto Morales-Fuentes, came to the United States illegally in 2001. He regularly sent $200 to $300 every two weeks to his wife; in order to obtain access to that money, she took a bus to a nearby city and withdrew it from a bank. As a result of the extra funds she received, her home in the village was larger than those of her neighbors, and she had a higher standard of living. Until 2013, her oldest son lived with her and the two youngest children, but that year he left for the United States and left her on her own.

It was not long before she began receiving anonymous notes asking for money and threatening her and the children. She told the immigration judge that she was certain the notes were from gang members. At first she did not take them seriously, but at the end of August 2015 they became more worrisome. One even threatened death if she did not pay the senders. On another occasion, someone knocked at the door and left a note with a vague threat that something bad would happen to her. Hernandez-Garcia reported these incidents to the police, but they ignored her. Fearful, she left Guatemala with Brian and Yeniser on August 27, 2015. When they reached the

U.S. border, Hernandez-Garcia was interviewed by the Border Patrol. They were promptly served with Notices to Appear, and on November 2, 2017, an immigration judge held a hearing on their applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 UNTS 114.

Hernandez-Garcia was designated the lead respondent at the hearing, but all three applicants testified. Hernandez-Garcia described the events set forth above, but, as the immigration judge found, she also admitted that "she told the [Border Patrol] officer that she had no fear of persecution or torture and that she had left her country because of the poverty." Brian, who was 18 years old by that time, recounted that just before the family left Guatemala he was regularly stopped by gang members, asked to join the gang, and asked about his father. No one ever harmed him, but he said that he was afraid to return because "the people who left the notes" thought that his family had money. Yeniser, age 16 at the hearing, testified that she lived in fear in Guatemala because there was no older man in the house. No one ever approached her personally, but her mother told her about the threats.

The immigration judge found all three to be credible, but she concluded that none of them had described harm that qualifies as past persecution. The judge acknowledged that the threats and encounters Hernandez-Garcia described were "unsettling," but they were nonetheless not sufficiently imminent or severe to be more than harassment.

In the alternative, the judge concluded that even assuming that the threats were severe enough to fall within the definition of persecution, Hernandez-Garcia's petitions for asylum and withholding had to be rejected for an independent reason: she failed to demonstrate a sufficient nexus between the harm she and her children experienced and a protected ground (race, religion, nationality, membership in a particular social group, or political opinion, 8 U.S.C. § 1101(a)(42)(A)). In addition to her concerns about nexus, the immigration judge was also skeptical about the two proposed social groups Hernandez-Garcia proposed: single females with no male head-of-household, and well-to-do persons opposed to gangs. Perceived or actual wealth, standing alone, does not form the basis of a particular social group, the judge said, and the gangs were extorting Hernandez-Garcia simply because they thought she could pay.

The immigration judge wrapped up her opinion with several final points. First, the judge ruled that Hernandez-Garcia had not demonstrated a well-founded fear of future persecution, nor had she shown that she and her children would be singled out individually for persecution in Guatemala. Furthermore, she had not shown that they belonged to any group that is subjected to a pattern or practice of persecution in Guatemala. Last, the judge found that nothing Hernandez-Garcia had described amounted to torture, for purposes of the CAT, see 8 C.F.R. § 1208.18(a), nor did she have any evidence that a public official would perform or acquiesce in acts of torture, or that she could not successfully relocate in the country to avoid harm.

The Board of Immigration Appeals "adopt[ed] and af-firm[ed] the decision of the Immigration Judge." For the asy-lum and withholding petitions, it emphasized the immigra-tion judge's finding of a lack of a nexus between the extortion threats and gang harassment she had experienced and any protected ground for relief. It also agreed with the immigra-tion judge that Hernandez-Garcia's showing fell short for purposes of the CAT. Finally, the Board addressed and re-jected Hernandez-Garcia's argument that the proceedings against her were jurisdictionally barred because of the ab-sence of date-and-place information in the Notice to Appear, citing its decision in *Matter of Bermudez-Cota,* 27 I&N Dec. 441 (BIA 2018). Hernandez-Garcia did receive a later notice with that information; she appeared at several hearings; and through counsel she admitted the factual allegations in the Notice and conceded that the alleged grounds of removal ap-plied to her.

## II

Before this court, Hernandez-Garcia raises four points: she argues that she presented enough evidence to demonstrate past persecution in Guatemala; she contends that she and her children belong to a particular social group that the immigra-tion judge and the Board failed to consider (the group of sin-gle females without a head of household, Petr. Brief at 33); she argues that her showing of a well-founded fear of future per-secution was adequate; and she urges that the immigration court lacked jurisdiction to hear her case, in light of the Su-preme Court's decision in *Pereira v. Sessions,* 138 S. Ct. 2105 (2018).

## A

We start with the last point, because it is one that we re-
cently resolved adversely to Hernandez-Garcia. The peti-
tioner in *Ortiz-Santiago v. Barr,* 924 F.3d 956 (7th Cir. 2019),
made precisely the same argument. Like Hernandez-Garcia,
petitioner Ortiz-Santiago had received a Notice to Appear
that did not include a specified time, date, and place for the
removal proceeding, but also like our petitioner, he made no
timely objection to that defect, he could show no prejudice
from it, and it was cured in a timely manner. We concluded
that the holding of *Pereira* only went far enough to show that
the agency erred by failing to include statutorily specified in-
formation. *Pereira* did not hold that this flaw was "jurisdic-
tional." After examining the statute and regulations, we con-
cluded that the omission of time, date, and place, while a mis-
take, is subject to normal rules of waiver and harmless error.
That ruling disposes of Hernandez-Garcia's jurisdictional ar-
gument. Not a shred of evidence in this record suggests that
she or her children were prejudiced by the omission of that
information in her own Notice to Appear. We therefore move
on to the merits of her petition.

## B

We first address Hernandez-Garcia's petitions for asylum
and withholding of removal. Like the immigration judge and
the Board, we can assume for the sake of argument that her
evidence sufficed to show past persecution and move directly
to the question whether she proved both that she belonged to
a particular social group and that the mistreatment she en-
dured was *on account of* her membership in that group. The
government argues that she waived this point by failing to de-
velop it in her brief. If it is correct, then we have no choice but

to deny the petition for review insofar as it covers asylum and withholding of removal, because the statute permits relief on those grounds only if such a nexus is demonstrated.

Hernandez-Garcia's brief starts off well enough, by quoting the pertinent statutory language requiring an asylum seeker to demonstrate "persecution or a well-founded fear of persecution *on account of* … membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A) (our emphasis). But then she turns immediately to the task of defining her proposed social group. She notes, for example, that this court's definition of a social group in *Cece v. Holder,* 733 F.3d 662 (7th Cir. 2013) (en banc)—young women who lived alone—is similar to the one she proposes. That may (or may not) be so. But the Board did not take issue with her proposed group. What it said instead was "the extortion threats the respondent experienced in Guatemala, recruitment attempts upon her minor son, and the respondents' fear of criminal gang members do not have a nexus to any protected ground."

It is hard, at best, to see where Hernandez-Garcia takes issue with the Board's finding about nexus. While a sympathetic reading of her brief might permit a finding that she has squeaked by the waiver hurdle, the fact is that she never squarely confronts the question whether she has shown a link between her alleged social group and the persecution she experienced. The best she does is to say, Petr. Br. at 34, that "Guatemala [is] a country that is well known for its history of violence against women who have no one to protect them," and that "[s]ingle mothers living alone are amongst these vulnerable women that are routinely subject to violence and assaults." After criticizing the Board for "dismiss[ing]" these points, the brief asserts that had the Board given these facts

proper weight, it "would have found a sufficient nexus be-
tween the threats and Petitioner's membership in this pro-
tected ground." *Id.*

Missing is any argument about *why* the Board should have
found the necessary link. Hernandez-Garcia never directly
addresses the immigration judge's finding that there is "no
evidence that the risk faced by the respondent is distinct be-
cause of her opposition to gangs or her lack of a male head of
household." Perhaps her discussion of the timing of the
threats, which arose after her eldest son left, was designed to
fill that evidentiary gap, but she never says this in so many
words. We do not know anything about the alleged persecu-
tors (whose identity is murky at best, unless one assumes
counterfactually that Guatemala is plagued by only one
gang). We do not know whether they are concentrated in
Huehuetanango or country-wide. And we do not know if the
gang picks on vulnerable women or if it indiscriminately tar-
gets anyone with perceived wealth. These facts and others
would be needed in order to demonstrate the link between
her status and the persecution that followed, but they are
missing here. That is enough to support a finding of waiver.

We add that even if we were to find the nexus argument
(barely) preserved, we see no reason to overturn the Board on
this point. Granted, the immigration judge's reasoning left
something to be desired, insofar as she seemed to think that
the persecutors' goals were dispositive on the nexus point.
That takes things too far. Gangs can raise money in all sorts of
ways, some with a nexus to a particular social group and
some without such a link, but all for the same goal. The ques-
tion is in which category does the persecution Hernandez-
Garcia experienced fall: nexus, random, or ubiquitous? The

immigration judge thought that Hernandez-Garcia was tar-geted because of her perceived wealth and no other reason. In this connection, the judge said that "there is no evidence that the *risk faced by the respondent is distinct* because of her opposi-tion to the gangs or her lack of a male head of household." (Emphasis added.)

That is indeed the key question, and the immigration judge and Board resolved it adversely to Hernandez-Garcia. She points us to no evidence that undermines this finding. In-deed, the record offers some support for the immigration judge's conclusion. Hernandez-Garcia lived alone without her husband from 2001 until she left Guatemala in 2015. Dur-ing most of that period her sons were too young to serve as household protectors. Despite her situation, the regular remit-tances from her husband did not lead to threats until 2014. This is not a record that compels a finding of nexus, and with-out that strong showing, Hernandez-Garcia could not prevail even if she has managed to preserve this point.

C

We conclude with a brief explanation of why Hernandez-Garcia's remaining arguments do not save her petition. Because she cannot show past persecution on account of a protected ground for purposes of asylum or withholding of removal, she is not entitled to a presumption that she will face future persecution upon her return to Guatemala. In order to prevail on a stand-alone argument of a well-founded fear of future persecution, she must show that her fear is "subjectively genuine and objectively reasonable in light of credible evidence." *Musollari v. Mukasey*, 545 F.3d 505, 508 (7th Cir. 2008) (citation omitted). We assume that she can meet the subjective part of this test. But in order to satisfy the

objective part, she must prove either that "there is a reasonable probability that she will be singled out individually for persecution or that there is a pattern or practice of persecution of an identifiable group, to which [she] belongs, such that [her] fear is reasonable." *Ayele v. Holder*, 564 F.3d 862, 868 (7th Cir. 2009), as amended July 14, 2009.

The immigration judge's finding that Hernandez-Garcia could not meet the objective test is grounded in the record. The judge noted that she offered no evidence that she would be singled out for persecution; that the authors of the threatening notes never sought her out; and that at most she had shown generalized crime in the country. The judge also noted the dearth of evidence about any distinct group-based persecution. We realize that Guatemala is unfortunately beset with violent crime, including a shocking level of violence against women, see AMNESTY INTERNATIONAL, "*Why Does Guatemala Have One of the Highest Rates of Femicide in the World?*", https://www.amnestyusa.org/why-does-guatemala-have-one-of-the-highest-rates-of-femicide-in-the-world  (last visited July 22, 2019),  but those general conditions do not alone suffice to satisfy Hernandez-Garcia's burden.

Finally, we say a word about her argument under the CAT. Even though it does not condition relief on a showing of membership in a social group and a nexus between torture and such membership, there are other equally demanding criteria for that relief, and Hernandez-Garcia has not met them. Threats of imminent death that cause "prolonged mental harm" can constitute torture under the regulations implementing the CAT. 8 C.F.R. § 1208.18(a)(4)(iii). The evidence in this record, however, does not compel a finding that Hernandez-Garcia faced a threat of "imminent death"

that caused "prolonged mental harm." Moreover, Hernandez-Garcia failed to show that "it was more likely than not that, if removed … [she] would be tortured *by or with the acquiescence of a public official.*" *Ramos-Braga v. Sessions*, 900 F.3d 871, 875 (7th Cir. 2018) (emphasis added). It is too big a leap from the indifference the police demonstrated about the threatening letters she received to a finding that public officials would either torture her or stand by while others did. More evidence was needed. Without it, this aspect of her petition must also be rejected.

The petition for review filed by Juana Hernandez-Garcia on behalf of herself and derivative petitioners Brian Morales-Hernandez and Yeniser Morales-Hernandez is DENIED.