**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2020
Decided March 24, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1996

| | |
|---|---|
| LEYLA E. HERNANDEZ-DIAZ and ALISSON M. MORAN-HERNANDEZ, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | Nos. A208-989-725 and A208-989-726 |
| WILLIAM P. BARR, Attorney General of the United States, *Respondent*. | |

**ORDER**

Leyla Hernandez-Diaz, a citizen of El Salvador, petitions, along with her minor daughter, for review of the denial of her applications for asylum and withholding of removal under the Immigration and Nationality Act. She sought relief based on threats she received from gang members because she was a police officer. Because substantial evidence supports the immigration judge's decision that the threats were too vague and speculative to establish persecution and were insufficiently connected to her occupation, we deny the petition for review.

## Background

Hernandez-Diaz entered the United States without proper documentation in May 2016 with her minor daughter, Alisson Moran-Hernandez, who is also a petitioner in this case. (The daughter's applications are derivative of her mother's.) The Department of Homeland Security initiated removal proceedings, and Hernandez-Diaz conceded that she was removable under 8 U.S.C. § 1182(a)(7)(A). She applied for asylum and withholding of removal based on the hazard that MS-13 gang members posed to her life because she was a police officer. She also sought protection under the Convention Against Torture, but she does not challenge the denial of that relief.

At a hearing before an immigration judge ("IJ"), Hernandez-Diaz and her husband (who had left El Salvador separately) testified that, for years, they had been national police officers in El Salvador without incident. That changed in August 2015, when Hernandez-Diaz was in her home and unknown people began banging on the exterior wall of the house. She turned off the lights and hid with her daughter. She called her co-workers on the police force, but by the time they arrived, the perpetrators had fled. Hernandez-Diaz never saw them, but she believed that they were members of the MS-13 gang because it is the dominant gang in the area. She testified that gang members targeted her for "the simple fact that [she and her husband] are police officers." The gangs knew that they were police officers, Hernandez-Diaz and her husband thought, because they wore uniforms while on duty, were photographed while working, and they hung their washed uniforms on a clothesline outside to dry.

The next month, MS-13 gang members shot guns into the air in Hernandez-Diaz's neighborhood. Police officers responded to the scene and arrested three gang members. The gang members had fired the guns, Hernandez-Diaz believed, to threaten her. A neighbor later warned Hernandez-Diaz and her husband to be careful because someone had threated to kill them and their daughter. Hernandez-Diaz and her husband believed that gang members made this threat because they mistakenly thought that Hernandez-Diaz had called the police during the shooting incident.

Three months later (after changes in work schedules required Hernandez-Diaz to be at home without her husband at night), she and her daughter began spending nights with her in-laws because she no longer felt safe in her home. She also requested time off work because she was afraid for her safety.

Then, in March 2016, Hernandez-Diaz and her husband were returning to their home when they saw people hiding in the bushes outside. As they rushed inside, they heard the hammer of a gun cock. Although she did not see the faces of the figures, Hernandez-Diaz believed they were MS-13 gang members because no one else would be targeting her.

Hernandez-Diaz and her husband also testified about four police officers they knew personally who were murdered by gangs between 2015 and 2017. The first was killed when she intervened to stop a robbery on a bus. Two others were ambushed and murdered by gang members when they responded to an emergency. The fourth was ambushed, tied up by his hands and feet, and killed.

In April 2016, Hernandez-Diaz left the police force, and she and her daughter fled El Salvador. Hernandez-Diaz testified that she is afraid to return there because she believes that the MS-13 gang would recognize her as a former police officer (based on photographs and her mannerisms) and kill her. Gangs in El Salvador kill police officers, Hernandez-Diaz testified, for the "simple fact that we are police officers" and because gangs derive power from those slayings.

After the hearing, the IJ denied her applications. She found Hernandez-Diaz credible but concluded that the past harm did not rise to the level of persecution. The IJ also found that Hernandez-Diaz had not shown a well-founded fear of future persecution because there was no reason to believe that gang members would single her out if she returned to El Salvador, and she did not show a pattern or practice of persecution of similarly situated individuals. And, although the IJ did not discuss the proposed social groups ("police officers in El Salvador," "honest police officers in El Salvador," or "former police officers in El Salvador"), she determined that even if Hernandez-Diaz had demonstrated persecution, she failed to show that the harm she suffered, or might suffer if she returned, was based on her employment as a police officer. Because Hernandez-Diaz could not establish asylum eligibility, she could not meet the higher standard for withholding of removal. Hernandez-Diaz appealed to the Board of Immigration Appeals, which affirmed. She now petitions this court for review.

## Analysis

Because the Board affirmed without opinion, this court directly reviews the IJ's decision, examining legal conclusions de novo and factual conclusions to determine

whether they are supported by substantial evidence. *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 841 (7th Cir. 2016).

Hernandez-Diaz first challenges the IJ's conclusion that she did not demonstrate past persecution to support her claim of asylum under 8 C.F.R. § 1208.13(b)(1). Persecution must rise above mere harassment—it involves "the use of *significant* physical force against a person's body . . . or nonphysical harm of equal gravity." *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011) (emphasis in original). Hernandez-Diaz contends that the purported gang members banging on the walls of her home, firing shots into the air in her neighborhood, hiding in her bushes and cocking a gun, and threatening her family with death, considered together, rise to the level of persecution. She urges that these incidents constitute "credible threat[s] to inflict grave physical harm." *Stanojkova*, 645 F.3d at 948.

But the IJ permissibly concluded that Hernandez-Diaz had not suffered past persecution. Threats will amount to persecution only in the most extreme circumstances: they must be "credible, imminent and severe." *N.L.A. v. Holder*, 744 F.3d 425, 431 (7th Cir. 2014). Although the incidents described by Hernandez-Diaz are frightening, the IJ reasonably concluded that those threats were too "vague, unsubstantiated, and unfulfilled" to rise to the level of persecution. *Compare Orellana-Arias v. Sessions*, 865 F.3d 476, 487 (7th Cir. 2017) (finding of past persecution not compelled where gang members physically attacked petitioner but inflicted only minor injuries and made unfulfilled death threats), *with N.L.A.*, 744 F.3d at 432–34 (threats directed at petitioner by guerillas who murdered her uncle and kidnapped her father compelled a finding of past persecution). And although the death threat relayed to Hernandez-Diaz by her neighbor is troubling, it was a vague rumor, and there is no evidence that any gang member attempted to follow through. *See Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005).

The IJ also did not err in concluding that Hernandez-Diaz fell short of establishing a well-founded fear of future persecution under 8 C.F.R. § 1208.13(b)(2). A well-founded fear of future persecution is one that is "subjectively genuine and objectively reasonable in light of credible evidence." *Hernandez-Garcia v. Barr*, 930 F.3d 915, 920 (7th Cir. 2019) (quoting *Musollari v. Mukasey,* 545 F.3d 505, 508 (7th Cir. 2008)). The IJ concluded that Hernandez-Diaz met the subjective prong. And Hernandez-Diaz contends that she also satisfied the objective component by showing *both* a reasonable probability that she will be singled out for persecution in El Salvador *and* a pattern or practice of persecution of an identifiable group to which she belongs. *See Hernandez-*

*Garcia*, 930 F.3d at 920 (one or the other would suffice). Hernandez-Diaz has not shown that her fear of future prosecution is objectively reasonable.

First, Hernandez-Diaz failed to offer "specific, detailed evidence indicating that it would be more likely than not that [she] would be individually targeted for harm" if she returns to El Salvador. *Orellana-Arias*, 865 F.3d at 488. The record supports the IJ's conclusion that Hernandez-Diaz lacked evidence that gang members would even know if she returns, or, if they did, that they would target her for harm. Gang members never went beyond threats or menacing conduct toward Hernandez-Diaz when she lived in El Salvador, and there is no evidence that the MS-13 gang looked for her after she fled or warned her against returning. Only her own speculation supports her argument that gang members will target her for violence if she returns.

Second, substantial evidence supported the IJ's conclusion that Hernandez-Diaz failed to show a pattern or practice of persecution of current or former police officers. This would require evidence of "a systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group." *Georgieva v. Holder*, 751 F.3d 514, 523 (7th Cir. 2014) (quoting *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005)). The IJ reasonably found that the news articles and country reports in the record evince a country-wide violent gang problem affecting the entire population of El Salvador. And she correctly concluded that such generalized conditions are insufficient to show a pattern or practice of persecution of police officers. *See Hernandez-Garcia*, 930 F.3d at 920–21. That same evidence makes clear that gang violence has caused substantial hardships for police officers in particular; however, the evidence does not reflect the extreme extent of police-specific mistreatment necessary to overturn the IJ on this point. *See, e.g., id.* ("shocking level of violence against women" insufficient to show systemic persecution of women by gangs); *Krishnapillai v. Holder*, 563 F.3d 606, 620–21 (7th Cir. 2009) (reports of extreme human rights deprivations suffered by ethnic minority insufficient to compel finding of pattern or practice of persecution).

Moreover, to reverse the IJ's finding with respect to either past or future persecution, this court would have to conclude that the El Salvadoran government is complicit in MS-13 gang violence or is "unable or unwilling to take steps to prevent" it. *N.L.A.*, 744 F.3d at 440. But the record here suggests that, although the gang violence has not been controlled, there is aggressive policing and state action to suppress gang violence. Hernandez-Diaz did not put forth evidence that the government ignores or is complicit in the gang problem; indeed, she testified that police responded when the

purported gang members individuals banged on the walls of her home and fired weapons into the air in her neighborhood.

Hernandez-Diaz also insists that she established the requisite connection between the purported persecution and her status as a (now former) police officer. The government argues that Hernandez-Diaz waived this argument, but she simply falls short of supporting it. To show that persecution was based on membership in a social group, a petitioner must identify a group that is cognizable under the Act and establish a nexus between the persecution and the membership in the group. *Orellana-Arias*, 865 F.3d at 484. The IJ assumed that the proposed social groups were cognizable but reasonably concluded that Hernandez-Diaz had no evidence to support her nexus argument. *See id*. In two of the incidents Hernandez-Diaz described, it is unclear whether gang members were involved at all. Even assuming they were, she cites nothing but her and her husband's conclusory testimony that the threatening incidents she experienced "occurred because [Hernandez-Diaz] is a police officer" and "just for being a police officer." That is one permissible inference based on circumstantial evidence. *See Bueso-Avila v. Holder*, 663 F.3d 934, 938 (7th Cir. 2011). But only Hernandez-Diaz's and her husband's subjective beliefs support their suspected motive as compared to any other possible one; without more, their inference is not "so compelling that no reasonable fact-finder could fail to find" that gang members targeted Hernandez-Diaz based on her occupation. *Id*. (quoting *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005)).

We affirm the IJ's decision denying Hernandez-Diaz's application for asylum because she did not establish past persecution or a well-founded fear of future persecution as a result of being a police officer. She also challenges the denial of withholding of removal, but the standard for that relief is more stringent. *See Dominguez-Pulido*, 821 F.3d at 845. To qualify, a claimant must demonstrate a clear probability that she will face persecution if removed. *Id*. Because Hernandez-Diaz cannot establish eligibility for asylum, she necessarily cannot satisfy the higher standard for withholding of removal.

For these reasons, we DENY the petition for review.