**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**January 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TEMURI GURCHIANI,

    Petitioner,

v.

MERRICK B. GARLAND, United
States Attorney General,

    Respondent.

No. 23-9588
(Petition for Review)

_____

### ORDER AND JUDGMENT*
_____

Before **HOLMES**, Chief Judge, **EBEL**, and **ROSSMAN**, Circuit Judges.
_____

Petitioner Temuri Gurchiani seeks this court's review of a September 29, 2023 order from the Board of Immigration Appeals (BIA). That order affirmed an Immigration Judge's (IJ's) decision to deny Mr. Gurchiani's application for asylum and withholding of removal and to order his removal from the United States. Exercising jurisdiction under 8 U.S.C. § 1252, we deny Mr. Gurchiani's petition for review.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

## A

Mr. Gurchiani is a citizen of both Georgia and Russia. For decades, he split his time between the two countries. During much of 2022, he lived in border towns in Georgia and Russia to find work to help support himself, and his wife and two children, who live in Tblisi, Georgia.

The events underlying this petition occurred in March 2022, when Mr. Gurchiani was working in Russia.[1] Over the course of about six days, Russian police and military officials visited his workplace, asking him to join in the "'special military operation' in Ukraine." RI.3. When Mr. Gurchiani declined to join the military efforts, these officials threatened him and used bats to beat him all over his body, causing extensive bruising and pain.

About six months later, Mr. Gurchiani returned to Georgia. After a few weeks, in October 2022, he came to the United States via Turkey, entering this country without inspection. After being served with a notice to appear, he applied for asylum and withholding of removal based on the

---

[1] Shortly before then, Russia had invaded Ukraine.

threats and beatings he sustained in Russia for refusing to join in the military efforts in Ukraine.[2]

**B**

Both asylum and withholding of removal require past or possible future mistreatment in another country. *See* 8 U.S.C. § 1158(b)(1)(A) (for asylum, requiring the applicant to be "a refugee"); *id.* § 1101(a)(42)(A) (defining "refugee" to require "persecution or a well-founded fear of persecution"); *id.* § 1231(b)(3)(A) (for withholding of removal, requiring "that the alien's life or freedom would be threatened"). On this point, Mr. Gurchiani's application focused on the threats and beatings he faced in Russia for refusing to join in the invasion of Ukraine. Further, for both forms of relief, the mistreatment must be "on account of" or "because of" the applicant's "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A) (for asylum); *id.* § 1231(b)(3)(A) (for withholding of removal); *see also id.* § 1158(b)(1)(B)(i) (for asylum, requiring one of these grounds "was or will be at least one central reason for persecuting the applicant"). We refer to this requirement

---

[2] Mr. Gurchiani initially also sought relief under the Convention Against Torture, *see* Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 113, but he no longer pursues that claim on appeal. We therefore do not address it further.

as "nexus." *See, e.g.*, *Miguel-Peña* v. *Garland*, 94 F.4th 1145, 1159 (10th Cir. 2024) ("To show persecution or fear of persecution 'on account of' a protected ground, an asylum applicant must establish a 'nexus' between the alleged persecution and a protected ground." (first quoting 8 U.S.C. § 1101(a)(42); and then quoting *Dallakoti* v. *Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010))); *Koffi* v. *Garland*, No. 21-9535, 2021 WL 5710031, at *3 (10th Cir. Dec. 2, 2021) (similarly using "nexus" to refer to the analogous requirement for withholding of removal).[3] On his application, Mr. Gurchiani alleged mistreatment based on political opinion and nationality.[4]

In May 2023, an IJ conducted a hearing at which Mr. Gurchiani—then appearing *pro se*—testified and provided evidence. That same day, the IJ issued an oral decision denying the application and ordering Mr. Gurchiani removed to either of his countries of citizenship—Russia or Georgia.

The IJ's order denied the application on several grounds. Given how we decide this case, one requires discussion: a lack of nexus.[5] In addressing

---

[3] *Koffi* is unpublished, but we rely on it for its illustrative use of the term "nexus" to refer to this withholding-of-removal requirement. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[4] Nowhere does Mr. Gurchiani's application mention harms he may face if he were returned to Georgia.

[5] As to asylum and withholding of removal, the IJ also found Mr. Gurchiani "is not a credible witness and has not been able to provide

Mr. Gurchiani's withholding-of-removal claim (though not his asylum claim), the IJ analyzed whether "the harm that he suffered back in Russia [wa]s on account of . . . a protected ground." RI.105. The IJ found it was not. She considered two possible protected grounds: political opinion and membership in a particular social group (PSG).[6] First, the IJ "f[ound] that the harm that [Mr. Gurchiani] suffered in Russia was not on account of a political opinion." RI.105. Second, the IJ rejected the membership-in-a-PSG theory because she found Mr. Gurchiani "was not even conscripted; he was bullied," meaning he could not be considered a member of a cognizable group related to evading military service. RI.105–06. Separately, the IJ "f[ound] that there is no evidence . . . that [Mr. Gurchiani] could be subject to harm in Russia just [for] being Georgian"—a reference to a third possible protected ground, nationality. RI.99.

Ultimately, the IJ determined Mr. Gurchiani did not show nexus—meaning he "failed to meet his burden of showing that any harm that he

---

sufficient corroboration to corroborate his claims," RI.101; his asylum claim fails because he must show harm in all countries of his nationality, and he focused only on Russia; he did not show past or likely future persecution; and he has not shown internal relocation within Russia would be infeasible.

[6] Mr. Gurchiani's application did not raise membership in a PSG. The IJ appears to have raised this theory herself.

suffered in the past or will suffer in the future is on account of one of the protected grounds." RI.106.

C

Mr. Gurchiani—now represented by counsel—appealed the IJ's decision to the BIA. In a single-judge order, the BIA dismissed the appeal. The BIA first found, "to establish eligibility for asylum," Mr. Gurchiani had "to demonstrate a well-founded fear of persecution in *both* Russia *and* Georgia*," but Mr. Gurchiani had shown no such fear in Georgia. RI.4 (emphasis added); *see also* RI.102–03. The BIA therefore concluded Mr. Gurchiani "is not []eligible for asylum." RI.4.

The BIA then turned to Mr. Gurchiani's application for withholding of removal. It denied relief on several grounds. *First*, the BIA found "[t]he [IJ] correctly concluded that several beatings resulting in bruises and pain, but no serious injuries, and unspecified threats do not rise to the level of persecution under applicable precedent." RI.4. It continued, "[F]orced conscription or punishment for evasion of military duty generally does not constitute persecution," given governments' general "right to require military service." RI.4. Because Mr. Gurchiani had not established an applicable exception to that general principle, the BIA affirmed Mr. Gurchiani "did not establish past persecution on account of a protected

6

ground" and "is therefore not entitled to a presumption of a clear probability of future persecution." RI.5 (citing 8 C.F.R. § 1208.16(b)(1)(i) (2022)).

*Second*, the BIA agreed with the IJ that Mr. Gurchiani "did not establish a clear probability of future persecution in Russia or Georgia." RI.5. In addition to finding insufficient evidence to establish that "clear probability" in either country, the BIA endorsed the IJ's conclusion that Mr. Gurchiani "has not met his burden to show he could not reasonably relocate to another part of Russia"—another basis for rejecting his claim. RI.5.

*Third*, and most centrally to our decision, the BIA addressed the IJ's no-nexus findings. As to political opinion, the BIA found Mr. Gurchiani "ha[d] not challenged" the IJ's findings on that ground "on appeal," so it "deem[ed] this issue waived." RI.6 n.3. As to membership in a PSG, the BIA found "the [IJ] did not clearly err in finding that the respondent was not forced to become a member of the Russian military"—the IJ's basis for rejecting that claim. RI.5; *see also* RI.105–06. As to nationality, the BIA explained, "as found by the [IJ], the respondent has not testified to or provided any other evidence that he would be subjected to significant physical harm on account of his Georgian nationality if he were to return to

Russia." RI.5. Thus, the BIA concluded, Mr. Gurchiani "is not eligible for withholding of removal." RI.6.[7]

This timely petition for review followed.

## II

On appeal, Mr. Gurchiani argues "[t]he BIA erred in three critical ways." Op. Br. at 7. The first of these arguments concerns asylum. The second and third concern withholding of removal. We need not, however, reach the merits of these arguments because waiver is dispositive as to both forms of relief. *First*, we will explain the scope of our review. *Second*, we will show why Mr. Gurchiani's failure to challenge the BIA's no-nexus finding before this court is decisive as to withholding of removal. *Third*, we will explain why that failure in this case is also decisive as to asylum.

## A

We first outline the scope of our review. "We review the BIA's legal determinations de novo and its findings of fact for substantial evidence. 'Under a substantial evidence standard, factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the

---

[7] The BIA also rejected Mr. Gurchiani's argument that the IJ hearing "lacked due process." RI.6. Mr. Gurchiani's opening brief does not raise that issue to this court, so we do not address it further.

contrary.'" *Dallakoti*, 619 F.3d 1264 at 1267 (citing and quoting *Witjaksono* v. *Holder*, 573 F.3d 968, 977 (10th Cir. 2009)).

"Where, as here, a single BIA member issues a brief order affirming the IJ's decision, we review the order as the final agency determination and limit our review to the grounds relied upon by the BIA." *Htun* v. *Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) (citing *Uanreroro* v. *Gonzales*, 443 F.3d 1197, 1203–04 (10th Cir. 2006)). But two exceptions bear mentioning. *First*, while the focus is on the BIA's analysis, this court is "not precluded from consulting the IJ's more complete explanation of those same grounds." *Orellana-Recinos* v. *Garland*, 993 F.3d 851, 855 (10th Cir. 2021) (quoting *Uanreroro*, 443 F.3d at 1204). *Second*, "this limitation on the grounds upon which we may rely to deny a petition for review is not applicable where, on remand, governing law would "'*require*[]" [the agency] to reach a "necessary result."'" *Zapata-Chacon* v. *Garland*, 51 F.4th 1191, 1196 (10th Cir. 2022) (alterations in original) (quoting *Gutierrez-Zavala* v. *Garland*, 32 F.4th 806, 810 (9th Cir. 2022)). "Put another way, we can avoid a remand if it would be futile." *Id.*

In addition to generally limiting our review to what the BIA decided, we also generally limit appellate review to what the parties present to us. "An appellant's opening brief must identify 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record

9

on which the appellant relies.'" *Bronson* v. *Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (quoting Fed. R. App. P. 28(a)(9)(a) (2006)[8]). This court "routinely ha[s] declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Id.* Litigants' responsibilities to shoulder their burdens on appeal are no different in immigration cases. *See, e.g.*, *Addo* v. *Barr*, 982 F.3d 1263, 1266 n.2 (10th Cir. 2020) (applying the same principle to find an immigration petitioner "has waived [an] issue"). Similarly, when a litigant "doesn't respond to" the opposition's "argument in his reply brief[,] . . . we treat any non-obvious responses he could have made as waived and assume the [opposition's] analysis is correct." *Eaton* v. *Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019); *accord United States* v. *A.S.*, 939 F.3d 1063, 1076 (10th Cir. 2019) (finding that "fail[ing] to interact with" a response brief's arguments in both opening and reply briefs leaves this court "free to conclude that [the appellant] waived, at the very least, non-obvious arguments *against* the" response brief's positions).

## B

With these principles in mind, we first turn to Mr. Gurchiani's arguments about the denial of his application for withholding of removal.

---

[8] This rule's text has not changed since *Bronson*, but it is now located in a different subsection. *See* Fed. R. App. P. 28(a)(8)(A).

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

Mr. Gurchiani urges the BIA erred because, in his view, "the BIA's understanding of a country's right to conscript in relation to persecution is erroneous." Op. Br. at 17 (heading capitalization omitted). And he argues "the BIA erred by applying an out-of-circuit standard to assess persecution." Op. Br. at 21 (heading capitalization omitted). Both withholding-of-removal arguments thus concern the BIA's conclusion that the beatings in Russia did not constitute persecution under applicable BIA and Tenth Circuit precedent.

The government urges this court to deny Mr. Gurchiani's petition, contending "the Board's findings concerning no nexus" are decisive as to his withholding-of-removal claim. Resp. Br. at 24–25. According to the government, "[n]one of Gurchiani's arguments . . . address the . . . independent reasons for denying" that claim. Resp. Br. at 23. "His waiver,"

11

it argues, "fully disposes of his claim[] for withholding of removal." Resp. Br. at 24.[9]

We must agree with the government that waiver is decisive in this case. Recall, the BIA found Mr. Gurchiani did not establish nexus for the alleged persecution in Russia. If that finding stands, Mr. Gurchiani's petition cannot succeed, because a successful claim for withholding of removal requires the petitioner to show nexus to a protected ground. *See* 8 U.S.C. § 1231(b)(3)(A). Because nexus is a factual question we typically review under the deferential substantial-evidence standard, *Dallakoti*, 619 F.3d at 1267–68, we are especially disinclined to disturb those findings absent any challenge whatsoever. To succeed on appeal, therefore, Mr. Gurchiani needed—at least—to challenge the BIA's no-nexus findings.[10]

---

[9] The government argues Mr. Gurchiani waived arguments concerning several other BIA findings. *See* Resp. Br. at 23–26. Because, as we will explain, his nexus-related waiver is decisive, we need not consider whether he also waived any other arguments.

[10] Unpublished cases in this circuit and published cases in other circuits—which we cite as persuasive authority—reinforce this conclusion. *See Asif* v. *Barr*, 833 F. App'x 204, 209 (10th Cir. 2020) (finding a failure to "address or challenge the BIA's no-nexus finding" means the petitioner "has waived any argument of error in that finding"); *Koffi* v. *Garland*, No. 21-9535, 2021 WL 5710031, at *2–3 (10th Cir. Dec. 2, 2021) (finding the petitioner's "failure to challenge the IJ's" finding that he "had not established . . . nexus" "forecloses success" on his asylum and withholding-of-removal claims); *Paz-Zaldivar* v. *Garland*, No. 21-9571, 2022 WL 3009925, at *3 (10th Cir. July 29, 2022) (finding, because the petitioner "does *not* challenge the agency's finding that she failed to prove she was

He did not. Nowhere in Mr. Gurchiani's opening brief do we find any discussion of the BIA's no-nexus findings. We "decline[] to consider arguments" against these findings because any such arguments "[we]re not raised . . . in [Mr. Gurchiani]'s opening brief." *Bronson*, 500 F.3d at 1104. Mr. Gurchiani's reply brief does not engage with the government's allegations regarding waiver. *See Eaton*, 931 F.3d at 1031 (confirming when a litigant fails to "respond to" the opposition's "argument in his reply brief[,] . . . we treat any non-obvious responses he could have made as waived and assume the [opposition's] analysis is correct"). Granted, this court's "preservation doctrines function *not* as absolute constraints on our power to review but, rather, more like prudential norms. That is, 'whether issues should be deemed waived is a matter of discretion.'" *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1182 (10th Cir. 2023) (quoting *United States* v. *Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019)). But we see no principled reason to overlook waiver in this case, nor has Mr.

---

targeted because of her gender or single-mother status," "we have no reason to reach any of her remaining arguments" on asylum, which has a similar nexus requirement as withholding of removal); *Riera-Riera* v. *Lynch*, 841 F.3d 1077, 1081 (9th Cir. 2016) (concluding, because the petitioner "has never identified, let alone argued, the ground on which he has been or would be persecuted[, t]his issue has been waived," which "is dispositive of his asylum and withholding of removal claims"); *Hernandez-Garcia* v. *Barr*, 930 F.3d 915, 919 (7th Cir. 2019) (similar).

13

Gurchiani suggested one.[11] "Since the unchallenged . . . finding is, by itself, a sufficient basis for the denial of [relief], [Mr. Gurchiani's] success on appeal is foreclosed—regardless of the merit of his [other] arguments . . . ." *Murrell* v. *Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994).

We therefore decline to reach the merits of Mr. Gurchiani's arguments regarding withholding of removal.

---

[11] After the Supreme Court decided *Loper Bright Enterprises* v. *Raimondo*, 144 S. Ct. 2244, 2273 (2024), this court ordered supplemental briefing because the government had argued for *Chevron* deference on one issue, *see* Resp. Br. at 34–51. It was only in his supplemental reply brief— that is, his reply to the government's arguments regarding *Loper Bright*— that Mr. Gurchiani even *acknowledged* the government's waiver-related arguments. *See* Supp. Reply Br. at 1–2. Given the importance of adversarial briefing and party presentation, that is too late for us to consider his waiver-related arguments.

Even if not too late, Mr. Gurchiani's arguments are not persuasive. Mr. Gurchiani first observes "[t]he issues [he] raised in his opening brief are not waived." Supp. Reply Br. at 1. Of course, the issues *he actually raised* are not subject to waiver, but he misses the central point: arguments concerning *other* issues—like nexus—*are* waived, and as we have discussed, *that* waiver is dispositive under the circumstances. *See* Resp. Br. at 21–26. Mr. Gurchiani then maintains he "has explained that applying an incorrect standard of law, as the BIA . . . did, warrants reversal." Supp. Reply Br. at 1. Even assuming the BIA applied an incorrect standard, Mr. Gurchiani has not challenged BIA's dispositive no-nexus findings, meaning those findings must stand and relief must be denied in this case.

14

## C

### 1

We now turn to Mr. Gurchiani's asylum claim. To qualify for asylum, an applicant must show "persecution or a well-founded fear of persecution *on account of race, religion, nationality, membership in a particular social group, or political opinion.*" 8 U.S.C. § 1101(a)(42)(A) (emphasis added). This basis for relief, like withholding of removal, requires that any persecution has a nexus to at least one of these five protected grounds.

While these two claims' elements are similar, a critical difference is the applicant's burden. We have interpreted the withholding-of-removal standard to require applicants to "prove a 'clear probability of persecution' on account of a protected ground." *Rodas-Orellana* v. *Holder*, 780 F.3d 982, 987 (10th Cir. 2015) (quoting *Karki* v. *Holder*, 715 F.3d 792, 801 (10th Cir. 2013)). Under this standard, the applicant must show "either past persecution in the proposed country of removal, or that 'it is *more likely than not* that he or she would be persecuted' on one of the specified grounds upon returning to the proposed country of removal." *Ritonga* v. *Holder*, 633 F.3d 971, 978 (10th Cir. 2011) (emphasis added) (quoting 8 C.F.R. § 1208.16(b)(2) (2011)).

Asylum, in contrast, requires "persecution or a well-founded fear of persecution on account of" a protected ground. 8 U.S.C. § 1101(a)(42)(A).

15

For that form of relief, "it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility." *Ritonga*, 633 F.3d at 976 (quoting *INS* v. *Cardoza-Fonseca*, 480 U.S. 421, 440 (1987)). "The test for restriction on removal is 'therefore more demanding than the "well-founded fear" standard applicable to an asylum claim.'"[12] *Id.* at 978 (quoting *Elzour* v. *Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004)). The Supreme Court has concluded one could have the "well-founded fear" required for asylum with only "a 10% chance of being shot, tortured, or otherwise persecuted," *Cardoza-Fonseca*, 480 U.S. at 440—far short of withholding of removal's "more likely than not" standard.

Because of asylum's generally lower bar, we have frequently held "the 'failure to satisfy the burden of proof for asylum . . . necessarily constitutes a failure to meet the more stringent burden of proof for restriction on removal.'" *Dallakoti*, 619 F.3d at 1268 (quoting *Ba* v. *Mukasey*, 539 F.3d 1265, 1271 (10th Cir. 2008)). In *Dallakoti*, we relied on that principle to reject a withholding-of-removal claim when an applicant failed to establish nexus as to asylum. *Id.* Logically, however, the converse is not true: simply

---

[12] This court uses "withholding of removal" and "restriction on removal," the more recent statutory term, interchangeably. *See Addo* v. *Barr*, 982 F.3d 1263, 1265 n.1 (10th Cir. 2020).

failing to meet the withholding-of-removal standard does not automatically foreclose asylum relief.

**2**

We now show why, despite these different legal standards, Mr. Gurchiani's failure to challenge the BIA's nexus findings in the context of withholding of removal is also decisive as to his asylum claim.

Recall, the BIA rejected Mr. Gurchiani's asylum claim on one ground: he had not "demonstrate[d] a well-founded fear of persecution in *both* Russia *and* Georgia"—instead focusing only on Russia. RI.4 (emphasis added). On appeal, Mr. Gurchiani challenges that conclusion, arguing asylum can be validly based on a well-founded fear in only *one* country of one's nationality. *See* Op. Br. at 8–17. In addition to responding to that argument on the merits, the government contends Mr. Gurchiani's above-described waiver, including as to nexus, "resolve[s] his asylum claim." Resp. Br. at 25. In reply, as to asylum, Mr. Gurchiani raises only the same argument raised in his opening brief, with no attention to waiver. *See* Reply Br. at 5–6.

Because of Mr. Gurchiani's failure even to discuss waiver, "we treat any non-obvious responses he could have made as waived." *Eaton*, 931 F.3d at 1031. Unless some "[]obvious response[]" persuades us otherwise, we can

17

"assume" the government's argument—that Mr. Gurchiani's nexus-related waiver also disposes of the asylum claim—"is correct." *Id.*

No "[]obvious response[]," *id.*, would likely succeed on this record. One *perhaps* "[]obvious response[]"—raised by Mr. Gurchiani's counsel during oral argument, Oral Argument at 2:30–6:15—is that the BIA made its nexus findings only as to withholding of removal, not as to asylum. Recall, the withholding-of-removal bar is higher than the asylum bar. Concluding Mr. Gurchiani failed to meet the higher bar, his argument goes, cannot be dispositive as to whether he met the lower bar.

Even this possible counterargument, though, falls short on the record before us. Mr. Gurchiani is correct that the BIA made no separate nexus findings as to asylum. *See* RI.4. But even assuming, as Mr. Gurchiani does, the difference in burden attends to the nexus requirement for each form of relief, we cannot disturb the BIA's findings. The BIA did not rely on the higher withholding-of-removal standard to deny relief. Rather, its findings regarding nexus were grounded in the evidentiary record. And the record before the BIA, the agency found, could not support *any* nexus finding. RI.5, 6 n.3.

As to political opinion, the BIA "deem[ed] this issue waived" because Mr. Gurchiani "ha[d] not challenged" the IJ's "determination" on that issue. RI.6 n.3. As to membership in a PSG, the BIA found no clear error in the

IJ's finding "that the respondent was *not* forced to become a member of the Russian military," which is decisive, as he therefore cannot be considered a member of any PSG related to evading military service.[13] RI.5 (emphasis added); *see also* RI.105. And as to the nationality ground, the BIA agreed with the IJ that Mr. Gurchiani "*has not testified to* or *provided any other evidence* that he would be subjected to significant physical harm on account of his Georgian nationality if he were to return to Russia." RI.5 (emphasis added). Mr. Gurchiani challenges none of these rulings on appeal. And importantly, these were *absolute* findings, meaning they do not depend on any difference in burden between the withholding-of-removal and asylum claims.[14] Mr. Gurchiani's standard-sensitive counterargument therefore

---

[13] Mr. Gurchiani has raised no separate theory concerning nexus to membership in a PSG for any feared *future* persecution. Recall, his application did not assert membership in a PSG as a ground for relief. His testimony during the IJ hearing described the basis of his feared persecution, but he raised no separate argument concerning nexus for any future persecution. And his appellate briefing raises no nexus-related arguments at all.

[14] Had the BIA tethered each nexus finding to the higher withholding-of-removal standard, then our conclusion may have been different. But it did not. Rather, the BIA's ruling confirms Mr. Gurchiani could not have made a nexus showing on this record that would satisfy *any* standard, rendering the above-described difference between the asylum and withholding-of-removal standards immaterial for purposes of this case.

fails.[15] Put differently, given the BIA's *absolute* no-nexus findings, "governing law would "'*require*[]" [the agency] to reach a "necessary result"""' on this record: that Mr. Gurchiani's asylum claim also fails for want of nexus. *Zapata-Chacon*, 51 F.4th at 1196 (alterations in original) (quoting *Gutierrez-Zavala*, 32 F.4th at 810).

Recall, Mr. Gurchiani raised *no* nexus-related arguments in *any* of his appellate briefs. So if a better counterargument exists, it is "non-obvious." *Eaton*, 931 F.3d at 1031. We thus agree with the government that the BIA's no-nexus findings—unchallenged on appeal—are also decisive as to Mr. Gurchiani's asylum claim, even if he did or would face persecution in Russia, Georgia, or both countries. For this reason, we decline to reach the merits of Mr. Gurchiani's arguments regarding asylum.

---

[15] We must "limit our review to the grounds relied upon by the BIA." *Htun* v. *Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) (citing *Uanreroro*, 443 F.3d at 1203–04). Because the BIA did not "explicitly incorporate[] or reference[] an expanded version of" its reasoning regarding nexus from the IJ's order, "our review extends no further." *Uanreroro*, 443 F.3d 1197 at 1204. We therefore do not consult the IJ's nexus findings. But, even if we were to do so, we would reach the same conclusion. The IJ's findings were similarly categorical. She found "the harm that he suffered in Russia *was not* on account of a political opinion." RI.105 (emphasis added). She found Mr. Gurchiani "*has failed to show* that he was, in fact, even conscripted to the military service in Russia," which is decisive as to membership in a PSG. RI.106 (emphasis added). And she found "*there is no evidence*, not even from the respondent's own testimony, that he could be subject to harm in Russia just [for] being Georgian." RI.99 (emphasis added).

## III

We DENY THE PETITION FOR REVIEW.

Entered for the Court

Veronica S. Rossman
Circuit Judge